DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

### DURING THE YEAR 1904.

## Chicago Hydraulic Press Brick Company v. Thomas A. Campbell.

### Gen. No. 11,521.

1. PEREMPTORY INSTRUCTION—*must be in writing.* All instructions must be in writing. The refusal of the court to instruct the jury to return a verdict of not guilty cannot be complained of upon appeal where no such written instruction appears to have been presented.

2. PEREMPTORY INSTRUCTION—*when refusal of court to give, cannot be complained of.* Where a party made a motion at the close of the evidence to take the case from the jury, but thereafter, by an instruction asked and given, submitted to the jury for its determination, as questions of fact, all the issues made by the pleadings, it cannot complain on appeal of the refusal of the court so to take the case from the jury.

3. INSTRUCTION—*must not give undue prominence to particular facts.* An instruction is properly refused which singles out a specific fact shown by the evidence.

4. INSTRUCTION—*right of court to refuse, which contains mere abstract propositions of law.* It is not error for the court to refuse an instruction which merely states an abstract proposition of law, notwithstanding it may in the abstract be correct.

5. INSTRUCTION—*must not ignore pertinent evidence in the record.* An instruction is improper which ignores pertinent evidence in the record.

6. INDEPENDENT CONTRACTOR—*when doctrine of, applies.* Where the driver of a wagon was not subject to discharge by the defendant and was in nowise under its control beyond the fact that it had the right to instruct him when to haul its product, he is not deemed its servant, and the doctrine of independent contractor applies.

(322)

7. INDEPENDENT CONTRACTOR—*who may urge doctrine of, by way of defense.* Corporations other than *quasi*-public corporations may avail of this doctrine by way of defense to actions for personal injuries.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed October 10, 1904.

**Statement by the Court.** Appellee was injured August 11, 1900, by a collision between a street car on which he was a passenger, operated by the Chicago Union Traction Co., and a wagon loaded with brick, belonging to the firm of Kimbell & Dymond, at the intersection of West Harrison street and Oakley boulevard, Chicago. Appellee brought suit against the Traction Company for his injuries, and after receiving $500 from the company agreed that he would not bring any suit against it for said injuries, and his suit against that company was subsequently dismissed for want of prosecution on being called for trial, on motion of defendant's attorney. Subsequently this suit was brought to recover for the same injuries against the appellant and Kimbell & Dymond, a trial of which resulted, appellee's attorney at the close of all the evidence having dismissed the case as to Kimbell & Dymond, in a verdict of $4,500 in favor of appellee and judgment thereon against appellant, from which this appeal is taken.

Among other special interrogatories submitted to the jury, the court, of its own motion, submitted the following questions, to wit:

"Third. Was the defendant, the Chicago Hydraulic Press Brick Company, guilty of the negligence charged against it in the declaration herein?

Fourth. Was Mohr, the driver of the wagon in question, the servant and agent of the above-named defendant?"

Each of which was answered by the jury, "Yes."

MATZ, FISHER & BOYDEN and H. M. MATTHEWS, for appellant.

JAMES J. BARBOUR, for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

For appellant it is claimed that the court erred in refusing to instruct a verdict of not guilty, in submitting to the jury said special interrogatories, and in refusing to give three instructions, Nos. 2, 3 and 4, requested by appellant, and that the verdict and answers to said questions three and four are clearly and manifestly against the evidence. We will consider the second and fourth of appellant's claims together.

Appellant cannot, in this court, maintain the first claim for two reasons, viz.: First. It fails to appear that at the close of all the evidence appellant submitted to the court a written instruction to find a verdict of not guilty. Montanya v. Emerich O. Co., 172 Ill. 92–7. Second. After its motion made at the close of the evidence to take the case from the jury, it thereafter, by an instruction asked by it and given by the court, submitted to the jury for its determination as questions of fact all the issues made by the pleadings. Consol. Coal Co. v. Haenni, 146 Ill. 614–626; Chicago T. R. R. Co. v. Schmelling, 197 Ill. 619–625; I. C. R. R. Co. v. Keegan, 112 Ill. App. 28–39; Omaha Packing Co. v. Murray, 112 Ill. App. 234–37.

We think there is no reversible error in the court's rulings in refusing to give the instructions referred to. The second instruction was properly refused, in that it singles out a specific fact shown by the evidence, viz., that the name and business of appellant appeared on a board on the wagon which it is claimed caused the injuries in question, and told the jury that this circumstance would not prove that the wagon belonged to appellant, or that Mohr, the driver, was appellant's servant. This was a clear invasion of the province of the jury, since this circumstance, as we think, tended to show both the matters which the instruction told the jury it did not prove. The third instruction merely states an abstract proposition of law, and no application of it is made to the case, and therefore under the well-settled law it was not error to refuse it. The fourth

instruction was, we think, calculated to mislead the jury, because there is evidence in the record, and not denied by appellant's testimony, tending to show that the driver of the wagon in question was in the employ of the appellant and under its direction as to the details of his actions, namely, as to the manner in which the wagons were to be loaded, and for this reason we think it was not error to refuse the instruction, which limits the jury to evidence as to the power of appellant to direct what brick the driver should haul and where he should deliver it.

As to the special interrogatories, it is not claimed, and the record fails to show, that they were submitted to the jury by the court of its own motion, without first submitting them to counsel. The third interrogatory relates to an ultimate fact in the case, as does also the fourth, when the whole evidence is considered. It was not, in our opinion, error to submit these questions to the jury, since there was evidence to justify them and they relate to ultimate facts.

The controlling question arises upon appellant's contention that the general verdict of the jury and its answers to said third and fourth interrogatories are clearly and manifestly against the weight of the evidence.

It appears from the evidence that at the time of the injury to appellee, and for a number of years prior thereto, appellant was engaged in the business of manufacturing and dealing in brick and other products made from clay and other materials, and as a part of this business it caused brick and other materials which it had sold to be transported in wagons from its yards in the city of Chicago to its different customers throughout said city. Horace M. Kimbell and W. H. Dymond, partners under the name of Kimbell & Dymond, were during the same time engaged in the business of teaming for others, and were also in the stone business on their own account. At the time of the accident, and for several years prior thereto, Kimbell & Dymond had an oral contract with appellant to do its teaming at its west yards, at which the wagon causing the injury to appellee was loaded. Under this con-

tract appellant paid Kimbell & Dymond a certain price per load of brick and according to the distance it was hauled. The wagons and horses were kept at appellant's yards in sheds belonging to it, but they were maintained by Kimbell & Dymond, and in charge of their employees. One Hurlstone, at the time in question and for some time prior thereto, was shipping clerk and yard-man for appellant at this yard, and as such had charge of the running of the yard. If Kimbell & Dymond desired to use their horses and wagons in their own stone business, they communicated with Hurlstone to find out whether he could spare any of their teams, as, under the contract with appellant, it was to have the preference in use of the teams to do its hauling before Kimbell & Dymond could use them for others or in their stone business. The drivers of the teams were employed and paid by Kimbell & Dymond with their money, but sometimes the money was handed to the men by Hurlstone, and the money in some instances was furnished by the appellant, but we think the clear weight of the evidence shows that this was done as a matter of accommodation for Kimbell & Dymond. Kimbell & Dymond had no one specially in charge of their teamsters whose business it was to direct them, but they were instructed to report to Hurlstone, who directed the teamsters when and where to do the hauling, though it does not appear that he gave them any other directions than what they should haul, where the load was to be taken, how the brick was to be loaded, and that they should be careful in handling the brick. There is evidence tending to show that the teamsters were under the directions of Hurlstone, and that he in one instance discharged one of the teamsters; but, after a careful reading and consideration of the evidence, we think it is established by its clear preponderance that Hurlstone had no power to hire or discharge the teamsters, and that he had no control over their actions further than to direct them when to haul brick, how they should load it and where it should be delivered. He did not direct the teamsters as to the way they should go, nor in any way as to how they

should drive the teams, nor is there any evidence that he had any power over the teamsters beyond that referred to. Such being, in our opinion, the clear weight of the evidence, it follows that the verdict and judgment should be set aside and a new trial awarded.

It is not claimed but that the driver of the team in question was negligent, and that his negligence caused the injury to appellee while the latter was in the exercise of ordinary care for his own safety, but the matter of contention is as to whether the driver was the servant of appellant or of Kimbell & Dymond. If he was appellant's servant, then it is liable for his acts; but. if he was Kimbell & Dymond's servant, then appellant is not liable, unless the servant was temporarily loaned to it for the special service for which he was engaged. Jefferson v. Jameson & Morse Co., 165 Ill. 138–41; Foster v. Wadsworth, 168 Ill. 514–18; Bayer v. R. R. Co., 68 Ill. App. 219–23; Crudup v. Schreiner, 98 Ill. App. 337–40; Consol. Fire Wks. Co. v. Koehl, 190 Ill. 145–9; Pioneer Con. Co. v. Hansen, 176 Ill. 100–8; Hale v. Johnson, 80 Ill. 185–6; Foster v. City of Chicago, 197 Ill. 264–8.

In the Hale case the Supreme Court in considering the question of independent contractor, quote with approval the following statement of the law from section 77 of Shearman & Redfield on Negligence, as follows: "One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor and not a servant." This case is quoted with approval by the Supreme Court in the Wadsworth, Jefferson and Foster cases, supra, in the former of which the syllabus of the case thus states concisely the court's ruling, viz.: "One who contracts with a business house to do all its hauling and delivery work at a specified sum per week, furnishing teams, wagons and drivers, over which he re-

tains full control, is a contractor and not a servant, and the business house is not liable for the negligent driving of the wagons, though its name and address are painted thereon." The court in speaking of the relation of the employer to the driver of the teaming contractor, said: "In this case appellee exercised no control over the driver of this wagon; it did not employ him; it did not pay him; it had no right to discharge him, nor had it the right to direct how or in what manner his work should be done, further than it should conform with its agreement made with Smiddie," and held that under these circumstances the driver of the wagon was not the servant of the employer of the teaming contractor.

The case at bar is identical in its facts with the Wadsworth case, except that appellant did exercise some control over the driver of the wagon, but the nature of that control is such, as we think, as makes the principle of the decision in the Wadsworth case controlling here. The only control which appellant exercised over the driver, as is shown by the clear weight of the evidence, is that it directed him when to haul the brick, how to load it and where to deliver it. This control was in conformity to, if not necessary under, appellant's agreement with Kimbell & Dymond. In the Hansen case the court said: "Control of servants does not exist unless the hirer has the right to discharge them and employ others in their place * * * and inasmuch as the right to control involves the power to discharge, the relation of master and servant will not exist, unless the power to discharge exists." We think the clear weight of the evidence here is that appellant had no right to discharge the driver of Kimbell & Dymond's wagon, and for that reason a new trial should be awarded appellant. The Koehl case reaffirms the doctrine of the Hansen case.

It is, however, contended on behalf of appellee, in substance, that the appellant and Kimbell & Dymond are one and the same concern, and that the employment of the latter by the former is but a mere device to shift responsi-

bility for the torts of the teamsters that the brick company controlled, and in this regard especial reliance is placed upon Economic, etc., Co. v. Myers, 168 Ill. 139–44. If the evidence supported the claim of appellee, then the Myers case would be controlling, but we are of opinion it does not. While the business relations between appellant and Kimbell & Dymond are shown by the evidence to have been intimate, and that Dymond was, at the time in question and for a long time prior thereto, employed as a salesman by appellant at a good salary, it is clear that the firm of Kimbell & Dymond did a separate and independent business of their own, not only in the teaming but in the stone business, and there is no other evidence which in any way tends to support appellee's claim. The whole evidence considered, we think it does not come within the authority of the Myers case.

A further claim is made that Kimbell & Dymond loaned their servants, the drivers of the wagons, to appellant, and hence the driver in question was for the time being appellant's servant. (Citing a number of cases.) We think the evidence referred to sufficiently shows that this contention is not tenable.

It is also claimed that appellant, being a corporation, could not shift its responsibility for the torts of persons engaged in hauling its wares, because they were independent contractors. (Citing the Myers case, *supra.*) We think the doctrine contended for has no application here, but only applies to *quasi*-public corporations, such as railway companies, street car companies and gas companies, on whose behalf the contractor was doing something which he could not do except by virtue of the corporation's franchise. Such was the Myers case and also R. R. Co. v. Dudgeon, 184 Ill. 477–80, and R. R. Co. v. Balkwill, 195 Ill. 535–8.

Because the verdict is clearly and manifestly against the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*