## Otto F. Fisher and Gustav Haller, trading as Otto Fisher and Company, Defendants in Error, v. Charles Levy Circulating Company, Plaintiff in Error.

## Gen. No. 17,785.

1. MASTER AND SERVANT, § 1*—*what master servant is employed by.* Where evidence does not show the circumstances of hiring of an employe, or what was said and done at the time of such hiring, but the witnesses merely state their conclusions on the subject, such evidence is insufficient to warrant a finding as to which of two companies hired such employe.

2. · MASTER AND SERVANT, § 839*—*when doctrine of respondeat superior applies.* Under some circumstances, a servant who is employed and paid by one person may become the servant of another to the extent that the original employer will not be liable for his negligent acts, but such condition does not arise until the original employer surrenders all right of control over the employe.

3. MASTER AND SERVANT, § 839*—*what master servant is under control of.* Where an employer furnished a horse, wagon and driver to a newspaper company to deliver its daily papers at a stipulated price for a stipulated amount of work, *held* that while such newspaper company could direct where the driver should deliver papers and make collections the evidence did not show any control over the management of the horse.

Fisher v. Levy Cir. Co., 182 Ill. App. 393.

4. MASTER AND SERVANT, § 865*—*what will be presumed.* Where an employer furnished a horse, wagon and driver to a newspaper company to deliver its papers, it would be presumed, in the absence of proof of the contrary, that as to all matters relating to the manner of driving, managing and handling the horse the original employer had control of the servant.

5. NEGLIGENCE, § 8*—*what constitutes.* The violation of a statute or city ordinance made for the protection of persons or property is such a violation of duty as will sustain an action for negligence, where injury to another is caused as the proximate result of such violation.

6. MUNICIPAL COURT OF CHICAGO, § 14*—*what court may take judicial notice of.* The Municipal Court will take judicial notice of an ordinance prohibiting persons from leaving horses in streets unattended, without being securely fastened.

7. MUNICIPAL CORPORATIONS, § 102*—*when ordinance need not be proved.* Where the existence of an ordinance is admitted it need not be proved.

8. ROADS AND BRIDGES, § 240*—*when negligence is question of fact.* Whether a driver left a horse in a street unattended without being securely fastened, in violation of a city ordinance, *held* to be a question of fact, and the finding of jury as to such question, being based on conflicting evidence, would not be disturbed.

Error to the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed October 15, 1913.

BERNSTEIN, GROSSMAN & BERNSTEIN, for plaintiff in error.

No appearance for defendants in error.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

Plaintiff in error is a corporation engaged in the wholesale newspaper delivery business. It was under contract with the Chicago Journal Company to furnish a horse, wagon and driver to deliver its daily papers at a stipulated price per week for a stipulated amount of work. If more than the regular amount of work

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Fisher v. Levy Cir. Co., 182 Ill. App. 393.

was done, the driver was paid additional wages for the extra work. The driver received his pay directly from plaintiff in error, who received its pay for the horse, wagon and driver directly from the Chicago Journal Company. Plaintiff in error made nothing out of the wages of the driver, but paid him all it received from the Journal Company for his services. The driver came each morning to the place of business of plaintiff in error and got the horse and wagon, and with it reported to the Journal Company for duty. In regard to all matters connected with the business of the Journal Company, the driver was subject to the orders of the Journal Company. Under its orders he delivered papers to its customers at various stores and news stands and collected money of its customers on bills given him by it. There is a controversy over who hired the driver. Plaintiff in error contends that the Journal Company hired him, while defendant in error contends that it was plaintiff in error who did so. The evidence on this point is wholly insufficient to base a finding on, either one way or the other. No witness has undertaken to relate the circumstances of the hiring or what was said and done by any one at the time of the hiring, or who participated in what was done, but all were allowed to state their conclusions on the subject of who did the hiring. Both plaintiff in error and the Journal Company had authority to discharge the driver independent of the other. On the afternoon of May 19, 1911, near the corner of 41st avenue and West Madison street, the driver left his horse in the street for the purpose of going into a nearby store to collect a bill. Whether the horse was left without fastening, or was left hitched to a weight on the ground, was a mooted question, there being most positive testimony both ways on that question. While the driver was in the store collecting the bill, the horse ran away and ran into the rig of the defendants in error, killed their horse and damaged their wagon and harness. They brought suit in the Munici-

pal Court for the damages so sustained, and on a trial by the court found the issues for defendants in error and entered judgment against plaintiff in error for $362.50. This writ of error is prosecuted to reverse that judgment.

The main contention of plaintiff in error is that the driver of the wagon was not its servant at the time in question, and that on the facts in this case it is not liable for the acts of the driver, whether negligent or not.

While it is true that under some circumstances servants who are employed and paid by one person may become the servants of another to the extent that the original employer will not be liable for their negligent acts, yet it may be laid down as a general proposition that before that condition arises the original employer must surrender all right of control over the employe. So long as the original employer retains the right to control the actions of the one employed, the relation of master and servant exists, and the rule *respondeat superior* applies.

The Court in *Boniface v. Relyea,* 36 How. Pr. (N. Y.) 457, says (p. 460): "There must be, besides the hiring, some degree of actual control over the person hired, and some right to direct him from time to time as the master may see fit; for *the responsibility of the master begins and ends with his control over and his right to direct his servant.*"

Judge Cooley, in his work on Torts, says, on page 1006, vol. 2: "His (the master's) control of the other is the important circumstance."

Our Supreme Court, in *Pioneer Fireproof Const. Co. v. Hansen,* 176 Ill. 100, says: "He is the master who has the choice, control and direction of the servants. The master remains liable to strangers for the negligence of his servants, unless he abandons their control to the hirer. Control of servants does not exist, unless the hirer has the right to discharge them

and employ others in their places. The doctrine of *respondeat superior* is applicable, where the person sought to be charged has the right to control the action of the person committing the injury. It follows, that the right to control the negligent servant is the test, by which it is to be determined whether the relation of master and servant exists; and, inasmuch as the right to control involves the power to discharge, the relation of master and servant will not exist, unless the power to discharge exists. (Shearman & Redfield on Negligence, secs. 160, 162; 2 Thompson on Negligence, p. 892, sec. 12; *Erie v. Caulkins*, 85 Pa. St. 247.)   *   *   *''

''Where the owner or contractor furnishes the material to be used and retains direction and control over the details of the work and the men employed, he is liable for negligence of the men employed. (*Jameson v. Morse Co.*, 165 Ill. 138.)''

In the case of *Consolidated Fireworks Co. v. Koehl*, 190 Ill. 145, the Court says: ''The test is whether in the particular service which he is engaged to perform he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired.''

In *Harding v. St. Louis Nat. Stock Yards*, 242 Ill. 444, it is said: ''*   *   * No absolute or arbitrary rule can be laid down by which it can be plainly seen in every case whether a person is the servant of the general or special master, as these terms are used in the decisions. The special facts of each case must be looked to in order to reach the proper conclusion. *   *   * The doctrine of *respondeat superior* is applicable where the person sought to be charged has the right to control the action of the person committing the injury. *   *   * The test in such case being whether in the particular service the servant continues to be under the direction and control of his master or the other party.''·

While it is undoubtedly true that the Journal Company had the control of the driver to the extent that it could and did direct where and when he should deliver papers and make collections, there is nothing in the record to indicate that it either had or attempted to exercise any authority over him, as to the management or control of the horse, or that in performing the duties of delivering papers or collecting bills the handling of the horse in any particular way was necessary or a matter of the least concern to the Journal Company. That was a matter, however, in which plaintiff in error, the owner of the horse, for many reasons that might be suggested, was especially interested.

Incident to the relation of master and servant is the right of the master to direct and control the servant in the performance of his duties, and without something to show that such right has been surrendered by the general master it will be presumed that it continues so long as the relation exists. It must, therefore, in this case, in the absence of proof to the contrary, be presumed that as to all matters pertaining to the manner of driving, managing and handling the horse, plaintiff in error, the general master, retained the right to direct the driver, including the right to direct and require him to obey the provisions of the ordinances of the city. If any negligence of the driver is shown by the evidence in this case, it was in leaving in the streets unattended a horse hitched to a vehicle, without securely fastening him. It follows that, as to the particular act in question, the driver was the servant and under the control of plaintiff in error, and the finding of the trial court in that regard is supported by the facts and the law.

It is next urged that the evidence in the record fails to establish that the driver was negligent.

The law is well settled that the violation of a statute or city ordinance made for the protection of persons

or property is such a violation of duty as will sustain an action for negligence where injury to another is caused as the proximate result of such violation. *Chicago, B. & Q. Ry. Co. v. Gunderson,* 174 Ill. 495; *Browne v. Siegel, Cooper & Co.,* 191 Ill. 226; *Swift & Co. v. Fue,* 167 Ill. 443.

It is charged in the statement of claim filed in the Municipal Court that the driver on May 19, 1911, failed "to securely fasten the horse as required by" section 1424 of the Municipal Code of Chicago. Plaintiff in error did not challenge the sufficiency or accuracy of this statement of claim, but filed its affidavit of merits, in which it says, "* * * that said horse was securely fastened, as required by section 1424 of the Municipal Code of Chicago * * *."

Counsel in his argument here admits that an ordinance existed and was in force on May 19, 1911, in substance, prohibiting leaving horses unattended on the streets without being securely fastened. Section 1424 of the Revised Municipal Code of Chicago of 1905 is as follows:

"1424. (Unfastened.) No person shall leave any horse or other animal attached to any carriage, wagon, cart, sleigh, sled, or other vehicle in any public way of this city, without securely fastening such horse or other animal, under a penalty for each offense of not less than two dollars nor more than ten dollars."

This ordinance was repealed by the revision that was adopted March 13, 1911, and was not in force as section 1424 at the time of the injuries complained of in this case, but the identical language was in force at that time as section 1972 of the revision of 1911.

It is contended that the ordinance was not introduced in evidence and, therefore, cannot be considered by this court.

We are inclined to the view that when the judgments of *nisi prius* courts are presented to Appellate tribunals for review such Appellate tribunals must take judicial notice of all things of which the *nisi prius*

courts are required to take judicial notice. *Hanley v. Donoghue,* 116 U. S. 1. It has been expressly held in this state that the Appellate Court will take judicial notice of the ordinances of the city of Chicago on review of a judgment in the Municipal Court, where that court, by section 54 of the act creating it (J. & A., ¶ 3371), is required to take such notice of the same. *City of Chicago v. Baker,* 157 Ill. App. 130. The Municipal Court was bound in this case to take such notice of such ordinance. *City of Chicago v. Williams,* 254 Ill. 360. As in that case, counsel here admits that the ordinance in question was in force on May 19, 1911. A fact that is admitted need not be proved. It being admitted that the ordinance existed, we are not bound to decide the question of the right of this court to take judicial notice of it. *City of Chicago v. Williams, supra.*

It was a question of fact whether the driver left the horse in the street unattended without being securely fastened, in violation of the ordinance. The evidence on this question was conflicting, and we are not able to say the finding of the court that it was so left was unwarranted.

The judgment of the Municipal Court is, therefore, affirmed.

*Judgment affirmed.*