that the defendant Stephan Building & Construction Company pay the taxable costs in the action to plaintiff's attorney within 30 days.

Argued before BURR, THOMAS, CARR, RICH, and PUTNAM, JJ.

John Klein, of Brooklyn, for appellant.
Louis J. Halbert, of Brooklyn, for respondent.

RICH, J. [1] The respondent only undertook to pay the interest and costs by May 31st, and the plaintiff to postpone further proceedings until such time, and to discontinue the action in the event that the payment was made. The stipulation was without consideration and I believe it to be invalid (Feldman et al. v. Rockford Co., 70 Misc. Rep. 66, 126 N. Y. Supp. 646; Trenor v. Le Count et al., 84 Hun, 426, 32 N. Y. Supp. 412); but, whether valid or invalid, its force and effect could only be determined by answer and trial of the issues (Trenon v. Le Count, supra; Cole v. Hinck et al., 120 App. Div. 355, 105 N. Y. Supp. 407). The defendant did not answer, and no such issue was tendered.

[2] The respondent contends, however, that the payment of interest to July 1st furnishes an adequate consideration. If we concede this, the payment of $60 was but a partial performance of the terms of the stipulation or agreement, and the respondent was not entitled to the benefits of the agreement until it had fully performed. Odell v. Hoyt et al., 73 N. Y. 343. The respondent had failed to comply with the terms of the stipulation, it had not answered, and the plaintiff was entitled to proceed with the action. If the agreement was valid, the learned court had no power to relieve the respondent from strict compliance with its terms by forcing upon the plaintiff an agreement he never made.

It follows that the order must be reversed, with $10 costs and disbursements, and plaintiff's motion for confirmation of the referee's report, and for judgment of foreclosure and sale, granted, with costs. All concur.

---

(83 Misc. Rep. 111.)

SALVO v. M. LARKIN & SON, Inc., et al.

(Supreme Court, Appellate Term, First Department. December 16, 1913.)

1. MASTER AND SERVANT (§ 332*)—INJURIES TO THIRD PERSON—RELATION OF PARTIES—QUESTION FOR JURY.

    Whether the original employer of a negligent employé, or one who contracts with the employer for or who hires the services of such employé, can be held liable for the employé's negligence, depends on the circumstances of each case, and is peculiarly a question of fact for the jury.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1274–1277; Dec. Dig. § 332.*]

2. MASTER AND SERVANT (§ 301*)—INJURIES TO THIRD PERSON—RELATION OF PARTIES.

    Where a contractor for the delivery of sand to a building under construction hired teams and drivers from a third person for a certain sum per day to work for him and under his exclusive control, the negligence

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of one of such drivers, resulting in injury to a servant of the general contractor for the building, rendered the sand contractor, and not the third person, liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Antonio Di Salvo against M. Larkin & Son, Incorporated, impleaded with John L. Keating and others. From a judgment for plaintiff, after a trial by a judge without a jury, defendant Larkin & Son appeals. Reversed, and new trial ordered.

Argued October term, 1913, before SEABURY, GUY, and BIJUR, JJ.

Amos H. Stephens, of New York City (Albert E. Dacy, of New York City, of counsel), for appellant.

George A. Knobloch, of New York City, for respondent.

BIJUR, J. Plaintiff, who was working for a general contractor, erecting a building, was injured through the negligence of a driver engaged in delivering sand at a building. This driver was in the employ of defendant appellant Larkin, who, however, was not a contractor on this building. Defendant Keating was the contractor to deliver sand. In brief, the testimony is that, when Keating needed more wagons than he had available, his foreman telephoned Larkin for teams or wagons. Larkin would thereupon send such wagons with teams and drivers as he could spare to the dock on which the sand lay. Keating's men would give the drivers a slip showing where the sand was to be delivered. The drivers would then start delivering sand at such destination, dumping it at such spots as Keating's foreman there might direct. The driver received a receipt for the sand from a representative of the general contractor, such receipt running to the name of Keating. Keating's foreman testified that Larkin was paid so much a day for a wagon, team, and driver; and all that was expected of the cart was that it should do a full day's work, which varied with the distance from the dock to the building in course of construction. He said that once a team had been recalled by Larkin in the middle of the day because Larkin had other use for it. Larkin received only a half day's pay for that team. The receipts which the drivers received from the general contractor, showing the number of loads of sand delivered, were handed in at the close of the day to Larkin, who transmitted them to Keating; or, if it happened to be more convenient, the driver would leave them at Keating's office himself. The carts would transport sand, gravel, or broken stone, whichever happened to be on the dock.

It is conceded that the horses and wagons were owned by Larkin and that the drivers were hired by him exclusively. The relations between Keating and Larkin were exceedingly informal, and no guide to an ultimate decision can be found in any expressed relation be-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tween them. Appellant contends that the drivers were actually and immediately in the employ of Keating. If that is so, this judgment must be reversed. A servant in the employ of one master may leave such employment, even temporarily, to engage in matters of his own, or, by the agreement of his master and upon his own consent, by entering the service of another for the time being. This is particularly well expressed by Mr. Justice Moody in Standard Oil Co. v. Anderson, 212 U. S. 215, 220, 221, 29 Sup. Ct. 252, 53 L. Ed. 480. To determine the question whether he is in the employ of his original master, whom I shall term the employer, or of the third person, whom we may call the hirer, is frequently difficult, particularly when, as in the case at bar, the relations between the two parties are informal, and the precise arrangement between them must be spelled out of the circumstances of the case. The answer to the problem must, however, be sought in those relations. Where the servant is engaged in the delivery of merchandise, it is a simple matter to determine who may be responsible for his negligent acts if the agreement between the employer and the hirer expressly provides which of them is to be responsible for the delivery. This seems to have been the key to the decisions in Weaver v. Jackson, 153 App. Div. 661, 138 N. Y. Supp. 609, and Howard v. Ludwig, 171 N. Y. 507, 64 N. E. 172. The absence of such an express agreement in respect of the wagon which caused the accident is the subject of comment in Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079.

While occasionally it is said that a good guide may be found in the answer to the question, "In whose business was the servant engaged" (Muldoon v. City Fire Prevention Co., 134 App. Div. 453, 456, 119 N. Y. Supp. 320), that is not always sufficient. In a certain sense a man who is actually in the employ of a master, and, of course, engaged in his business, may be said, when performing some service contracted for by his master for another person, to be also engaged in the business of that other person. Perhaps the most practical formula for solving the difficulty is to determine whether the hirer is contracting with the master for a general service to be rendered or for the employment of men and apparatus. Thus, in Kellogg v. Church Charity Foundation Co., 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, Ann. Cas. 1913A, 883, the hirer contracted for transportation; in the Weaver Case, supra, for the delivery of goods; whereas, in Howard v. Ludwig, supra, in McCarty v. McCabe, 131 App. Div. 396, 115 N. Y. Supp. 829, and in Cunningham v. Improvement Co., 20 App. Div. 171, 46 N. Y. Supp. 954, the hirer engaged as his own the servants of the employer with such apparatus—horses, wagons, or tackle—as the circumstances might require. In the former class of cases the servant remains in the employ of the original master and in the second class he enters the employ of the hirer, who thereby becomes responsible for the servant's negligent acts. Indeed, in the Standard Oil Case, supra, where the original employer (the defendant in that case) was held liable, the court says significantly, at page 219 of 212 U. S., and page 253 of 29 Sup. Ct. (53 L. Ed. 480): "The stevedore [the hirer] agreed to pay the defendant $1.50 a thou-

sand for the hoisting"—indicating plainly that it was a general service which was contracted for.

The mere fact that the hirer directs the immediate movements of the employés is not in itself determinative, as pointed out in the Kellogg Case, supra, at page 197 of 203 N. Y., 96 N. E. 406, 38 L. R. A. (N. S.) 481, Ann. Cas. 1913A, 883, and in the Standard Oil Case, supra, at page 222 of 212 U. S., and page 254 of 29 Sup. Ct. (53 L. Ed. 480), where Mr. Justice Moody says:

"Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details, or necessary co-operation, where the work furnished is part of a larger undertaking."

However, the character and *extent* of the hirer's direction and control may become an important factor in determining responsibility. Applying these tests to the case at bar, it seems to me clear that the contract between Keating and Larkin was that Larkin should furnish horses, wagon, and driver for a certain sum per day to do work selected and under the direction of Keating, which was a hiring of apparatus and men at a gross sum per diem. It is true that the work to be done by the men and wagons was the *transportation* of sand, earth, or gravel, as the case might be. That, however was purely adventitious and necessarily followed from the fact that the hiring was of horses, wagon, and a driver; but it seems to me to be clear that the spirit of the arrangement was that Larkin should be without responsibility other than for the general efficiency of the apparatus and the integrity of the servant placed under the control and at the complete disposal of Keating as *his* apparatus and as *his* servant to be directed and controlled by Keating as his own for the time being.

The responsibility, therefore, for the negligent act of the driver in the case at bar falls upon his immediate employer, Keating; and this judgment, under which Larkin is held liable, must be reversed, and a new trial ordered, with costs to appellant to abide the event.

SEABURY, J. (concurring). [1, 2] I concur in the result. I know of no set formula by which it can be determined whether the original employer or the contractor or hirer can be held liable for the act of a servant. Many of the rules which have been suggested for determining this question merely beg the real question as to who was the master at the time of the accident. Each case must be determined upon its own peculiar facts. All the circumstances of the case are to be considered, including the measure of control which the contractor or hirer exercised over the conduct of the servant at the time of the accident. If this measure of control was such as to subject the servant to the same kind and degree of authority as a master would ordinarily exercise over his own servant, the fact that the servant was employed by some one else, who paid his wages, would not relieve the person exercising the authority of a master from liability.

The question is peculiarly one of fact, to be determined by a jury under proper instructions in the light of all the circumstances of the case. In the present case the facts proven show that at the time of the accident the plaintiff was subject to the exclusive control of the

defendant Keating, and not the appellant, against whom the judgment has been rendered; and for that reason the judgment should not be permitted to stand.

GUY, J., concurs with SEABURY, J.