## No. 11,894.

### Thayer, Conservatrix *v.* Kirchhof.

Decided April 2, 1928.

Action for damages for personal injuries. Judgment for defendant.

### *Affirmed.*

1. Master and Servant—*Employee.* Kirchhof had a contract to erect a building, and let the contract for hauling away excavated dirt to Myers; Myers being short of help called on Delashmutt for a team, wagon and driver which were furnished; Whitaker was injured through the alleged negligence of Stevens the driver of Delashmutt's team; Kirchhof was not consulted and knew nothing of the arrangement between Myers and Delashmutt. Held, that Stevens was not the employee of Kirchhof and that the latter was not liable for his negligence.

2. Trial—*Contract—Jury Question.* Where the parties are in accord as to what a contract is, there is no necessity for a finding by the jury as to its terms.

3. Appeal and Error—*Excluded Evidence.* There is no error in the rejection of immaterial evidence.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Sackmann, Judge.*

Mr. Fred W. Mattson, Mr. Fred N. Holland, for plaintiff in error.

Mr. WILLIAM E. HUTTON, Mr. BRUCE B. McCAY, for defendant in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS action is by Edna Whitaker Thayer as conservatrix of the estate of C. A. Whitaker, mental incompetent, against Francis J. Kirchhof doing business as The Francis J. Kirchhof Construction Company, to recover damages for a personal injury to Whitaker, the mental incompetent, resulting from the negligence of the defendant's servant Stevens. At the close of the evidence the trial court, on the defendant's motion, directed a verdict for him on the ground that Stevens, whose negligence, if any there was, caused the injury, was not a servant or employee of the defendant Kirchhof at the time of the accident. Plaintiff is here with her writ.

The question for decision here, as below, is, what was the relation between Kirchhof, the defendant, and Stevens at the time of the injury. As we read the record there is no dispute in the evidence as to the controlling facts. Kirchhof was the general contractor for making an addition to the May Company's store building in Denver. In carrying out this contract it was necessary to excavate on the lot on which the proposed building was to rest. The work of excavating; that is, digging of the dirt that was to be removed, was done by Kirchhof through his own workmen. As he had no facilities of his own, such as horses, wagons and drivers, for hauling away the excavated dirt, Roy F. Myers, who was in the teaming, or hauling, business and owned horses, wagons or trucks and employed his own drivers, made an arrangement with Kirchhof to furnish the latter with the necessary wagons, horses and drivers in hauling this dirt and Kirchhof agreed to pay Myers therefor at the rate of

$8.00 per day for each outfit. Myers was to furnish as many teams, drivers and wagons as Kirchhof requested. Myers had nothing whatever to do with the actual work of digging or loading of the dirt into the wagons. All that Myers had to do with the work was to haul away the dirt from the May premises to some place or spot selected by him with which Kirchhof had no concern. There was no written contract, but Myers and Kirchhof are in accord that the arrangement between them was as above outlined. A few days before the accident Myers needed elsewhere some of the eight or more teams, wagons and drivers, that were then on this job, and called upon one Delashmutt to send some of his teams and drivers to work on the May job in place of Myers' teams withdrawn. Delashmutt, like Myers, was in the teaming business and the two had an arrangement that when one needed additional outfits for hauling, the other, on request, would furnish them. Delashmutt in this instance complied with Myers' request and sent a wagon, team and a driver, Stevens, telling him to go to the May basement as they wanted a team down there. At the time Stevens who owned his own team and wagon, was working for Delashmutt on some job. When he arrived at the May place he did not report to any one there in charge but followed Myers' teams, still on the job, into the basement. Usually some shoveler or employee of Kirchhof who was engaged in the excavation, merely directed Stevens where to place his wagon, and Hays, Kirchhof's foreman in charge of the work, also would, or could, give such directions. The dirt thus excavated and loaded on the Myers and Delashmutt wagons was hauled to a street dump in the city, they themselves, under the arrangement between Kirchhof and Myers, disposing of it as they saw fit. While Stevens was thus at work neither Myers nor Delashmutt gave him any specific directions. Delashmutt paid him every Saturday night on the basis of $8.00 per day. Myers collected from Kirchhof both for himself and Delashmutt and out of

the collections Myers paid his own drivers, and turned over to Delashmutt the amount coming to him, and Delashmutt paid Stevens. Delashmutt had no contract with Kirchhof, and was not at the place of work at any time while Stevens was there. On objection of the defendant the court refused to allow Delashmutt to testify how he was reimbursed for the money he paid Stevens, the object unquestionably being to show that it was out of money paid by Kirchhof to Myers and by Myers paid to Delashmutt. Hays, the defendant's foreman, might direct the work of hauling from the pit or basement and Kirchhof testified he presumed did so direct when it was necessary, as that was what he was there for.

The foregoing statement of facts is taken from the plaintiff's opening brief and is as favorable to her as she can claim. In addition thereto it should be said that Kirchhof was not consulted and knew nothing of the arrangement between Myers and Delashmutt, whereby Stevens, who at the time was working for Delashmutt, took his own team, on direction of Delashmutt, to the May building to haul dirt in place of one of Myers' teams that was sent elsewhere. There is no evidence that Kirchhof, or any of his employees, or the foreman, had, or exercised, any control over or gave any direction whatever to Stevens, further than to direct him generally where to place his wagon in the basement and such direction, of course, was in direct connection with the work of excavation. No direction was given to him how to manage his team or where or how to drive it after his wagon was loaded. Stevens himself testifies that the only instruction given him by Hays, Kirchhof's foreman, was as to the place where he was to get the dirt. At the time of the accident Stevens was returning from a trip to the dump and, as he started to drive from the street or sidewalk into the pit or basement, the tongue of his wagon struck Whitaker, the mental incompetent, throwing him to the ground and causing the injury complained of.

The plaintiff has grouped her assignments of error under the three following heads: (1) That the trial court erred in granting defendant's motion for a directed verdict, because the evidence shows that Stevens was doing the defendant's work under the direction and control of the defendant, and, therefore, as matter of law, Stevens was the servant of the defendant. (2) Error in granting defendant's motion for a directed verdict because it was, at least, for the jury to say what the contract of the parties was and what conclusions should be drawn from the evidence concerning the relation between Stevens and the defendant. (3) That the court erred in excluding certain evidence offered by the plaintiff.

Taking up these assignments in their order.

1. It will be observed that the assignment itself assumes, mistakenly, as we think, that Stevens was doing the defendant's work, and was doing it under the direction and control of the defendant. If Stevens was, at the time of the accident, Kirchhof's servant and as the result of the servant's negligence the injury was inflicted, Kirchhof may be liable under the general doctrine of respondeat superior; but if Stevens then was in the employment of Myers or Delashmutt, and if each of them as to the defendant was an independent contractor, the defendant is not liable. In *Frerker v. Nicholson,* 41 Colo. 12, 92 Pac. 224, 13 L. R. A. (N. S.) 1122, 14 Ann Cas. 730, upon which it seems the trial court chiefly relied, we held that where a person hires of another a vehicle and driver to be used in carrying third persons to and from certain points and exercises no control over the driver further than to tell him in a general way to carry the occupants, the owner, and not the hirer, is liable for injuries which result to such occupants as the result of the driver's negligence. Our reading of the cases on this general subject leads to the conclusion, which seems to be logical, that there is no difference or distinction in respect to such liability between carriers of passengers and carriers of

freight or materials. The leading case in the Supreme Court of the United States on this general subject is *Standard Oil Co. v. Anderson,* 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480. In the opinion of Mr. Justice Moody in that case is a statement of the doctrine which we think is applicable to the case in hand, and we quote it in full because it so succinctly and clearly states the proper rule: "It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work."

The court observes that to determine to which a given case belongs the inquiry usually is: "Whose is the work being performed?" which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work, and the writer of the opinion says that in making this ascertainment it is necessary carefully to distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation.

The latest expression of the Supreme Court of the United States we have found is in the case of *Linstead v. Chesapeake & O. Ry. Co.*, 48 Sup. Ct. 241, handed down at the October, 1927 term of that Court. This case is important and bears directly on the case we are now considering, particularly because it distinguishes the facts of that case from those of *Hull v. Philadelphia etc., Ry.*, 252 U. S. 475, 40 Sup. Ct. 358, 60 L. Ed. 670. The Linstead case was held to fall under the first of the two classes referred to in the opinion of Mr. Justice Moody in the Anderson case, and the Hull case, supra, came under the second. In the Linstead case the Chesapeake & Ohio Railway Company and the Big Four Railway Company, in the interchange of traffic, made an arrangement whereby the Big Four Company lent to the C. & O. Company locomotives, cabooses and train crews to take certain of the Big Four freight trains over the rails of the C. & O. Company. The C. & O. Company did not pay the Big Four any rental for such loan and the only consideration for it was reciprocal service rendered to the Big Four by train crews, locomotives and cabooses of the C. & O. Such freight trains of the Big Four Company, while on the rails of the C. & O. Company, were under the supervision and control of the trainmaster of the C. & O. Company, and while the Big Four crew was not subject to discharge by any officer of the C. & O., and the Big Four paid the wages of its own trainmen, still, in the operation of trains over the C. & O. track, the Big Four employees obeyed the signals of the switch tenders of the C. & O. Company and complied with all the rules of the C. & O. for operation on its line. In the opinion of Chief Justice Taft in the Linstead case, after quoting from Justice Moody's opinion in the Anderson case, supra, it was held that in the transfer by the Big Four of its train crew and equipment from its own line to that of the C. & O., the work by the train crew of the Big Four was the work of the C. & O. Company, to which latter company was transferred the entire control and

direction thereof and that the train crew was doing solely the work of the C. & O. Company. Contrasting the Linstead case with the Hull case, supra, the court said that in the Hull case there was no such transfer of the relation of the employees from the general employment of the Western Maryland road to a special employment by the Philadelphia & Reading; hence the transferee was not, but the transferer was, still the general master.

Many authorities have been cited by counsel upon both sides in this case. The plaintiff relies chiefly upon the following cases: *Sargent Paint Co. v. Petrovitzky,* 71 Ind. App. 353, 124 N. E. 881; *Higgins v. Western Union Tel. Co.,* 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537; *Salvo v. M. Larkin & Son, Inc., et al.,* 144 N. Y. Supp. 776, and cases referred to in the opinions.

The defendant's authorities, among others, are the Frerker case from our own court, which is annotated in 13 L. R. A. (N. S.) 1122, and the cases commented upon by the annotator in connection with the review of the Frerker case. Also to cases collected in 1918E, L. R. A. (N. S.), p. 121: *Hanatsek v. Wilson,* 146 N. Y. Supp. 1016; *Nauyoks v. Otis Elev. Co.,* 163 N. Y. Supp. 430; *Fisher v. Charles Levy Circulating Co.,* 182 Ill. App. 393; *Cartwright v. New Orleans Ry. & L. Co.,* 131 La. 210, 59 So. 124; *Wilbur v. Forgione & Romano Co.,* 109 Me. 521, 85 Atl. 48; *Peach v. Bruno,* 224 Mass. 447, 113 N. E. 279; *Balfour v. Bell Tel. Co.,* 34 Ont. L. Rep. 149; 16 L. R. A. (N. S.), 816, and notes of the annotator; *Chicago Hydraulic P. B. Co. v. Campbell,* 116 Ill. App. 322; *Holbrook v. Olympia Hotel Co.,* 200 Mich. 597, 166 N. W. 876.

We think our Frerker case, the decisions of the Supreme Court of the United States and the great weight of authority in this country, are with the defendant. Referring to our summary of the facts it will be seen that Kirchhof contracted only with Myers. He did not know Delashmutt or Stevens or that either of them was at work on this job. His relation, at least so far as it grows out of an express contract, was only to Myers and it was

not that of master and servant. Myers merely agreed to furnish Kirchhof with all the wagons, teams and drivers the latter needed to carry away the dirt which Kirchhof by his workmen excavated on the May lot. Myers furnished all the facilities for doing so—a complete equipment. The mere fact that Myers employed and paid the drivers and could discharge them at pleasure is not, of course, conclusive as to the relation existing between him and Kirchhof, but Myers did not part with or surrender any control over his drivers in doing the work, which was ultimately, of course, for the benefit of Kirchhof. In the process or work of hauling dirt, neither Kirchhof himself nor his foreman assumed or exercised any control whatever over the drivers further than merely to direct them where to go with their wagons to receive the dirt which was placed in the wagons by Kirchhof's workmen. In the actual hauling or driving or management of the teams the Myers' drivers and the ones supplied to him by Delashmutt, were under the sole control and direction of the original employer by whom they were hired and paid. The case as established by the facts is one where the original employer of Stevens, whether it be Myers or Delashmutt, who directly or indirectly furnished Kirchhof with drivers and equipment for hauling dirt, retained complete control and had the sole power of direction and control of their own employees, including Stevens if he was an employee. The original employer neither surrendered, nor purported to surrender, control of his drivers to Kirchhof. The work that Stevens was doing at the time of the accident was the very work which the independent contractor Myers or Delashmutt was employed to do; that is, the hauling of dirt. This process of hauling included not only the carrying away of the dirt from the May basement but the return trip to the basement from the dump where the wagons were unloaded.

2. There is no dispute whatever as to the contract between Kirchhof and Myers. Both of them testified, and

each of them gave the same version of it. Even though the contract was not in writing, but was oral, there seems to be no conflict in the authorities that the contract, having been established, there was no necessity for submitting to the jury for determining what the contract was. The parties themselves being in accord as to the contract, there is no necessity for a finding by the jury of something that was not in dispute.

3. The evidence offered by the plaintiff and rejected by the court was entirely immaterial to any feature of this case. Any arrangement that existed between Myers and Delashmutt as to the payment of Stevens could not be material. And even if the very same money, or its equivalent, which Delashmutt used in paying his employee Stevens, if he was such, was turned over to him by Myers and was the same, or part of the, money Myers received from Kirchhof, that would have no bearing whatever upon any question or issue in the case. Stevens was driving his own team at the time of the accident and apparently had full control and management of it. If he was the employee or servant of any of the parties, he was not the employee of Kirchhof for the latter certainly had no control over him in the driving of his team or in the hauling of the dirt. The only contract that Kirchhof entered into was with Myers, and Myers was an independent contractor. What arrangement existed between Myers and Delashmutt is not important here; but whatever it was, it does not make Stevens the employee of Kirchhof. There is no evidence even tending to show that the original employer of Stevens in this case, whoever he was, did not have full power to control and direct his employee Stevens, and other employees, in the performance of their work of carrying away dirt. If the suggestion or admonition of Mr. Justice Moody that we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, is to be followed, no other conclusion can be reached than that Stevens' employer

retained direction and control over him, and that the only direction or instruction given by the defendant Kirchhof or his foreman was confined to pointing out or designating the place where Stevens was to·place his wagon in order to have it loaded.

It necessarily follows that the judgment should be, and it is, affirmed.