227 F.2d 485
 MARYLAND CASUALTY COMPANY, Appellant,
v.
PACIFIC EMPLOYERS INSURANCE COMPANY, Appellee.
PACIFIC EMPLOYERS INSURANCE COMPANY, Cross-Appellant,
v.
MARYLAND CASUALTY COMPANY, Cross-Appellee.
 Nos. 5148, 5149.
 United States Court of Appeals Tenth Circuit.
 Nov. 7, 1955.
 
 Samuel M. January, Denver, Colo. (January & Gilchrist, Denver, Colo., on the brief), for appellant.
 Kenneth Wormwood, Denver, Colo. (Wolvington & Wormwood, Denver, Colo., on the brief), for appellee.
 Before BRATTON, MURRAH and PICKETT, Circuit Judges.
 BRATTON, Circuit Judge.
 
 
 1
 Maryland Casualty Company, hereinafter referred to as Maryland, instituted this action against Pacific Employers Insurance Company, hereinafter referred to as Pacific, for a declaratory judgment determining the rights and liabilities of the two companies under liability insurance policies issued by them, respectively. The material facts were not in controversy. A. M. Corkins, of Greeley, Colorado, was a commercial carrier by motor vehicle within the intent and meaning of the laws of Colorado. Maryland issued to Corkins its policy of liability insurance. The policy described the insured as a grain dealer, and it expressly covered a certain trailer and tractor to which reference is hereinafter made. The maximum amount of coverage in the policy was $25,000 for each person, $50,000 for personal injury for each accident, and $5,000 for damage to property for each accident. The policy provided that the word 'insured' should include the named insured, any person while using the vehicle, and any organization legally responsible for the use thereof, provided the actual use of the vehicle was by the named insured or with his permission. And it further provided that if the insured had other insurance against a loss covered by such policy, the company should not be liable for a greater proportion of such loss than the applicable limit of liability stated in such policy bore to the total applicable limit of all valid and collectible insurance against such loss. Colorado Milling and Elevator Company and Denver Flour Mills Company were corporations; the latter was a wholly owned subsidiary of the former; both were engaged in the grain elevator and milling business; and both were operating motor vehicles under commercial carrier permits issued by the Public Utilities Commission of Colorado. Pacific issued to Colorado Milling and Elevator Company its policy of liability insurance. The policy designated as the named insured Colorado Milling and Elevator Company and certain subsidiary companies, including Denver Flour Mills Company. The vehicles covered were all equipment owned, used, or operated by the named insureds. The maximum amount of coverage in the policy was $100,000 for each person, $300,000 for each accident, and $5,000 for damage to property for each accident. In respect to the word 'insured' covering the named insured and any other person while using the motor vehicles with the permission of the named insured, and in respect to the limit of liability in the event of other insurance, the policy contained provisions substantially identical with those in the policy issued by Maryland. An endorsement was attached to the policy which related to hired automobiles. It provided that the insurance afforded for bodily injury liability and for property damage should apply with respect to hired automobiles, subject to the provisions following therein. The substance of the subsequent provisions referred to was that the words 'hired automobile' should mean a motor vehicle used under contract in behalf of, or loaned to, the named insured provided such automobile was not owned by or registered in the name of the named insured, an executive officer or partner of the named insured, or an employee or agent of the named insured, who was granted an operating allowance of any sort for the use of such automobile; that the word 'automobile' whenever used in the policy, with respect to the insurance afforded under the endorsement, should include 'hired automobile'; that the definition of insured agreement of the policy should apply to the insurance afforded under the endorsement, except to the owner of the automobile or any employee of such owner; that the insurance should apply to the maintenance or use, for the purposes stated in the schedule forming a part thereof, of any hired automobile; and that the definitions in the policy of commercial and pleasure and business should apply respectively to automobiles of the commercial or truck type and to automobiles of the private passenger type, except as otherwise provided. There was also attached to the policy the motor vehicle public liability and property damage insurance certificate which the statutes and the rules require to be filed with the Public Utilities Commission of Colorado setting forth that Pacific had issued to the Denver Flour Mills Company the policy of bodily injury liability and property damage liability insurance required by the statutes and the rules; and there was also attached the uniform public liability and property damage endorsement required by the statutes and the rules. The last endorsement provided among other things that Pacific agreed to pay any final judgment, within the limits set forth in the policy or endorsements attached thereto for death or personal injury and damage to property resulting from the ownership, maintenance, or use of any and all motor vehicles, pursuant to a certificate of public convenience and necessity or a permit issued by the Commission; that liability for death or injury to any one person should not exceed $5,000; and that liability for property damage should not exceed $1,000.
 
 
 2
 Corkins entered into an oral agreement with Denver Flour Mills Company to furnish a truck and driver to such company for the purpose of hauling grain from various elevators to Denver. Everett Wayne Kent had been regularly employed by Corkins as a truck driver for eighteen or twenty years. He was driving the tractor and trailer owned by Corkins and covered by the policy issued by Maryland. A load of grain was being transported for Denver Flour Mills Company pursuant to the oral agreement. The trailer and tractor was involved in an accident with two automobiles on a highway in Colorado. One person was killed, another was injured, and both automobiles were damaged. Kent filed a claim for benefits under the Workmen's Compensation Act; Corkins and Maryland were named as employer and insurance carrier, respectively; and benefits were awarded to Kent. Two suits were filed in the state court, one to recover damages for the death of the person killed in the accident and the other to recover damages for the personal injury sustained therein. Corkins, Colorado Milling and Elevator Company, and Kent were joined as defendants in each case. Maryland accepted coverage under its policy according to the terms thereof and made demand upon Pacific that it accept coverage under its policy for its proportionate share of any and all claims and demands arising out of the accident. Pacific denied liability and rejected the demand. Judgment for plaintiff was entered in each case, and the two judgments aggregated $11,000. Maryland paid both judgments under an agreement between it and Pacific that such payment would not be considered voluntary and would be without prejudice to the rights of the two companies.
 
 
 3
 The trial court entertained the view that Kent was an employee of Corkins; that he was not an employee of Denver Flour Mills Company; that the hired automobile endorsement attached to the policy issued by Pacific was applicable; that Corkins and Kent were excluded from coverage under such endorsement; that the uniform public liability and property endorsement attached to the policy issued by Pacific covered Kent in the respective amounts stated therein; and that the proportion of liability of Pacific was 16.666 per cent on the death or personal injury coverage and 20 per cent on the property damage coverage. And in harmony with such views, the court entered judgment which provided that Maryland recover from Pacific $1,833.26, representing 16.666 per cent of the $11,000 which had been paid in the discharge of the two judgments rendered in the state court, and further provided that in the event settlement should be made of the two property damage claims, Maryland should pay 80 per cent and Pacific 20 per cent thereof. The parties perfected separate appeals.
 
 
 4
 On its appeal, Maryland states with candor that the real question in the case is whether Kent was at the time of the accident an employee of Denver Flour Mills Company. It urges that under the terms of the statutes of Colorado and the rules and regulations promulgated by the Public Utilities Commission of that state, Kent was an employee of Denver Flour Mills Company and that the judgment should have determined the rights of the two companies under their respective policies accordingly. Corkins, Colorado Milling and Elevator Company, and Denver Flour Mills Company were subject to the statutes of Colorado and the rules and regulations promulgated by the Public Utilities Commission relating to carriers by motor vehicle. Section 11, article 10, chapter 115, Colorado Revised Statutes 1953, empowers the Commission to promulgate such rules and regulations as may be reasonably necessary for the effective administration of the provisions of the chapter. Rule 11 promulgated by the Commission relates to ownership or leasing of equipment of carriers by motor vehicle, and it provides:
 
 
 5
 '(a) All permit holders shall either own the motor vehicles operated under their permits or shall lease such equipment. Leasing of equipment shall not include the service of a driver or operator, but the employment of drivers or operators shall be made upon a basis of a separate transaction by which the driver or operator shall bear the relationship of an employee to the carrier. The leasing of equipment or employing of drivers with compensation on a percentage basis, dependent upon tonnage hauled per trip, or for any period of time, is prohibited. All leases shall provide that the lessee shall have absolute and exclusive control and management of leased vehicles during the term of the lease.
 
 
 6
 '(b) Leases of equipment shall be in writing and a duplicate original of such lease, with the actual signatures of lessor and lessee thereon, shall be filed with the Commission.
 
 
 7
 '(c) The Commission shall at all times have the right to examine all leases of equipment, and approve or disapprove the same.'
 
 
 8
 Rule 12(a) concerns itself with permits for emergency equipment, and it provides:
 
 
 9
 '(a) Whenever any commercial carrier by motor vehicle, in cases of emergency or unusual demands for transportation, must use equipment not listed with the Commission, and for which identification cards have not been issued, the permit holder shall furnish the operator of each emergency vehicle with, and the operator of any such vehicle, shall carry, a letter stating that the emergency vehicle described in such letter is being operated as such under the authority of the permit held by the commercial carrier using such emergency vehicle. Such letter of authority shall specify the number and class of the permit held by the writer thereof, the name and address of the owner of such emergency vehicle, license number, identification of insurance policy which covers the emergency vehicle, a complete description of the vehicle, the nature of the emergency requiring use of such equipment, for what trip or trips such emergency equipment is needed, particularly describing the points of origin and destination of same, and the period for which the emergency vehicle is to be operated as such.'
 
 
 10
 An emergency letter was issued to Denver Flour Mills Company. It authorized that company to operate as emergency equipment for a specified period the motor vehicle owned by Corkins and involved in the accident. But Rule 11 requires that a lease of equipment shall be in writing; that a duplicate original with the actual signatures of the lessor and lessee thereon shall be filed with the Commission; and that the Commission shall at all times have the right to examine all leases, and to approve or disapprove the same. Corkins and Denver Flour Mills Company did not comply with that strict command of the rule. They never entered into a written lease, and therefore no duplicate thereof with the signatures of the parties thereon was ever filed with the Commission. The rule provides that the leasing of equipment shall not include the service of a driver or operator and that the employment of drivers or operators shall be made upon a basis of a separate transaction by which the driver or operator shall bear the relationship of an employee to the carrier. There was a complete failure to comply with that inflexible provision of the rule. Instead of complying with it, the oral agreement into which Corkins and Denver Flour Mills Company entered included the furnishing of the equipment and the driver. The agreement did not include upon the basis of a separate transaction the furnishing of the driver. The regulation expressly forbids the leasing of equipment or the employing of drivers with compensation on a percentage basis, dependent upon tonnage hauled per trip. In violation of that unyielding provision in the rule, the agreement between Corkins and Denver Flour Mills Company provided for remuneration for the hauling of grain on a percentage basis, dependent upon haulage per trip. And the regulation exacts in clear terms that the lessee shall have absolute and exclusive control and management of the leased vehicles. The agreement between Corkins and Denver Flour Mills Company did not contain any provision of that kind. Under it, the lessee merely designated the grain to be hauled and fixed the destination. It did not have any further control or management of the vehicle. The rule was promulgated pursuant to statutory authority vested in the Commission. It had the force and effect of law and therefore the agreement was subject to its requirements. Universal Indemnity Insurance Co. v. Tenery, 96 Colo. 10, 39 P.2d 776. Since the agreement fell far short of complying with the rule in certain fixed respects, and affirmatively contravened its clear commands in other respects, the rule did not have the force and effect in law of making Kent the employee of Denver Flour Mills Company.
 
 
 11
 Maryland attacks the judgment on the further ground that aside from the statutes of Colorado and the rules promulgated by the Public Utilities Commission, Kent was as a matter of common law an employee of Denver Flour Mills Company at the time of the accident. The rationalizing general rule is that a servant may be lent or hired by his master to another for some special purpose and become the servant of such other person in the performing of the particular service contemplated by the loan or hire. But while a person in the general employ of one person may be lent or hired to another in such way as to become the servant of the person to whom he is lent or hired for the time and occasion, the mere fact that an employee is sent to do certain work pointed out to him by the person who made the arrangement with his general employer does not make him that person's servant. Kelley v. Summers, 10 Cir., 210 F.2d 665.
 
 
 12
 Kent was a regular employee of Corkins and had been for eighteen or twenty years. Corkins selected him, determined and paid his compensation, determined and assigned his work, directed its performance, and had the right to discharge him at will. There was no provision in the agreement between Corkins and Denver Flour Mills Company that while the grain was being transported for the latter, it should have directing supervision and control over Kent. And in carrying out the agreement, Denver Flour Mills Company merely told Kent the location of the grain to be hauled and the point of its destination. It did not exercise any further supervision, direction, or control over him. It did not pay him anything. And it did not have the power to replace him with another driver of the truck. Corkins had that power. And Corkins had the power to direct Kent at any time to cease transporting grain for Denver Flour Mills Company, go elsewhere, and engage in other work. Viewed in the light of these uncontroverted facts and circumstances, it is clear that under the common law as it obtains in Colorado, Kent was not an employee of Denver Flour Mills Company. Instead, he was an employee of Corkins. Thayer v. Kirchhof, 83 Colo. 480, 266 P. 255; Landis v. McGowan, 114 Colo. 355, 165 P.2d 180.
 
 
 13
 On its appeal, Pacific advances the contention that the fact that Denver Flour Mills Company was insured under the policy of Pacific does not make Pacific liable to Maryland. As we understand the argument in support of the contention, it is in substance that if Kent was not covered under the policy issued by Pacific, then in the event Denver Flour Mills Company was forced to pay anything by reason of Kent's negligence, it would have a claim or cause of action against Kent to recover back that amount; and that in order to avoid circuity of action, judgment should have been rendered in favor of Pacific. The argument is ingenious but not persuasive. Maryland being liable under its policy, Pacific being liable under the uniform public liability and property damage endorsement attached to its policy, and the two companies occupying that juxtaposition, the proration provisions contained in the two policies came into play. And such provisions required the two companies to participate in the loss on the basis of the formula therein specified.
 
 
 14
 The judgment is affirmed.