CHRISTIAN ANDERSON, Respondent, v. CHARLES H. BOYER et
al., Appellants.

1. MASTER AND SERVANT — UNLOADING CHARTERED BOAT — NEGLI-
GENCE. If the owner of a lighter, by his contract with a charterer, gives
the latter possession and absolute control of the boat and its captain until
the charterer shall have accomplished the work for which he engaged the
boat, including its unloading, and a third person is injured through the
negligence of the captain in unloading the charterer's goods at destina-
tion, the captain is deemed to have been acting as the servant of the char-
terer and not of the owner, and his negligence is not chargeable to the
owner who, being under no obligation to unload the boat, has not, in fact,
attempted to control or interfere with it.

2. TERMS OF CONTRACT — CONTROL OF BOAT AND CAPTAIN — EVI-
DENCE. Where, in an action to recover from the owner of a lighter dam-
ages for a personal injury sustained through the negligence of its captain
in unloading goods, the defendant testifies that he had offered to charter
the boat to a third person at a certain sum per day, which was to include

the services of the captain, who was employed by him by the month, that this proposition was accepted and that the contract was subsequently carried out by the parties, and there are no facts or circumstances tending to discredit such testimony, but it is corroborated, the trial court is not at liberty, in the absence of contradictory evidence, to submit it to the jury to find whether there was not an entirely different contract, under which the owner retained control of the boat and its captain.

3. CONTROL OF CAPTAIN OF CHARTERED BOAT. The fact that, after the charterer of a lighter has taken possession of the boat, the owner inspects her condition, does not, of itself, indicate that the owner had not divested himself of all control over the captain of the boat while under charter.

4. CONTROL OF CHARTERED BOAT. Where a lighter has been chartered and used for the transportation of the charterer's goods and her unloading is delayed, the fact that the owner of the boat tells her captain to collect the bill for her use and not to allow the goods to be removed till the bill is paid, is not, of itself, inconsistent with the absolute control of the boat by the charterer for the period necessary for putting on, shipping and taking off the articles which the boat was selected to transport.

*Anderson* v. *Boyer*, 13 App. Div. 258, reversed.

(Argued April 28, 1898; decided June 7, 1898.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 22, 1897, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

This was an action to recover damages for a personal injury alleged to have been caused by the negligence of defendants.

The facts, so far as material, are stated in the opinion.

*J. Hampden Dougherty* for appellants. Plaintiff and the captain were fellow-servants, and the plaintiff having been injured, as he claims, by the act of the captain (his fellow-servant), cannot recover. (*Bagley* v. *Consolidated Gas Co.,* 5 App. Div. 432; *Cullen* v. *Norton,* 126 N. Y. 5; *Hogan* v. *Smith,* 125 N. Y. 774; *McCampbell* v. *Cunard S. Co.,* 144 N. Y. 552; *Hudson* v. *Ocean S. Co.,* 110 N. Y. 625; *Cregan* v. *Marston,* 126 N. Y. 568, 571; *Filbert* v. *D. & H. C. Co.,* 121 N. Y. 207; *Hussey* v. *Coger,* 112 N. Y. 617; *Kimball* v. *Cushman,* 103 Mass. 194; *Johnson* v. *City of Boston,* 118 Mass. 114; *Hasty* v. *Sears,* 157 Mass. 123; *Morgan* v. *Smith,* 159 Mass. 570; *Coughlan* v. *Cambridge,* 160 Mass. 268;

*Michael* v. *Stanton*, 3 Hun, 462; *Murray* v. *Dwight*, 15 App. Div. 241; *Potter* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 77; *Keenan* v. *N. Y., L. E. & W. R. R. Co.*, 145 N. Y. 190; *Marvin* v. *Muller*, 25 Hun, 163; *Kimmer* v. *Weber*, 151 N. Y. 417; *Cunningham* v. *Syracuse Impr. Co.*, 20 App. Div. 171; *Murray* v. *R. R. Co.*, 1 McMull. (S. C.) 385; *Farwell* v. *Boston & M. R. R. Co.*, 4 Metc. 49.) The rule of law announced in the foregoing point applies as well to a gratuitous servant or volunteer, or one assisting at the request of a servant. (Wood on Mast. & Serv. 909, 910, § 455; *Osborne* v. *Knox & Lincoln R. R.*, 63 Me. 49; *Flower* v. *Railroad Co.*, 69 Penn. St. 210; *Everhart* v. *Terre Haute, etc., R. Co.*, 78 Ind. 292; *Wischam* v. *Richards*, 136 Penn. St. 109; *Degg* v. *Railway Co.*, 1 H. & N. Exch. 772.) The plaintiff failed to show that he was not guilty of contributory negligence. (*Whalen* v. *Citizens' G. L. Co.*, 151 N. Y. 70; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 248; *Weston* v. *City of Troy*, 139 N. Y. 281.) The defendants were not liable to the plaintiff, because they did not stand in the relation of superiors to the captain of the lighter. The captain was the servant of the charterer. (*Wyllie* v. *Palmer*, 137 N. Y. 248; S. & R. on Neg. [4th ed.] 269; Wood on Mast. & Serv. § 424; *Cunningham* v. *Syracuse Imp. Co.*, 20 App. Div. 171; *McDowell* v. *Ramsdell Trans. Co.*, 78 Hun, 228; *Milligan* v. *Wedge*, 12 Ad. & El. 737; *Quarman* v. *Burnett*, 6 M. & W. 407; *Robinson* v. *Corbett*, 9 M. & W. 709; *Allen* v. *Haywood*, 7 Ad. & El. 960.) The hiring of the boat by F. Schoenewolf and his assumption of control over the captain and mate absolved the defendants from all responsibility. (*Gracie* v. *Palmer*, 8 Wheat. 632; *McIntyre* v. *Bowne*, 1 Johns. 233; *Drinkwater* v. *Spartan*, 1 Ware, 153; *Trinity House* v. *Clark*, 4 Maule & S. 298; *Sherman* v. *Fream*, 30 Barb. 481; *United States* v. *Shea*, 152 U. S. 403; *Hagar* v. *Clark*, 78 N. Y. 45.)

*J. Edward Swanstrom* for respondent. The negligence in this case was not that of a fellow-servant of plaintiff, but of

defendants' employee, for whose act they are responsible. (*Mott* v. *Consumers' Ice Co.*, 73 N. Y. 547; *Ochsenbein* v. *Shapley*, 85 N. Y. 222; S. & R. on Neg. [4th ed.] § 225, and cases cited; *Butler* v. *Townsend*, 126 N. Y. 105; *Sullivan* v. *Tioga R. R. Co.*, 112 N. Y. 643, 647; 44 Hun, 304; *Kane* v. *Mitchell Trans. Co*, 90 Hun, 68; *Svenson* v. *Atlantic Mail S. S. Co.*, 57 N. Y. 111; *Johnson* v. *Netherlands Am. S. Nav. Co.*, 132 N. Y. 577; *Kilroy* v. *D. & H. C. Co.*, 121, N. Y. 22; *Sandford* v. *Standard Oil Co.*, 118 N. Y. 571; *Brewer* v. *N. Y., L. E. & W. R. R. Co.*, 124 N. Y. 64, 65.) The agreement for the use of the boat was a mere contract for the transportation of merchandise which did not change the ownership of the boat nor exonerate defendants from responsibility for the negligence of their servant. (*Hagar* v. *Clark*, 78 N. Y. 45; *Marcadier* v. *Chesapeake Ins. Co.*, 8 Cranch, 49; *Leary* v. *U. S.*, 14 Wall. 607; *Reed* v. *U. S.*, 11 Wall. 591, 600; *Scarff* v. *Metcalf*, 107 N. Y. 217; *MacTaggert* v. *Henry*, 3 E. D. Smith, 390; *Hove* v. *Groverman*, 1 Cranch, 214.) Carriers by water are bound to deliver their cargoes upon the wharf after giving due notice to the consignee, unless the bill of lading contains special agreements, or a known and established usage to the contrary exists. (*Kilroy* v. *D. & H. C. Co.*, 121 N. Y. 22.) The evidence of defendant Boyer as to the agreement to charter the boat was the evidence of an interested witness and was uncorroborated. (*Elwood* v. *Western Union Tel. Co.*, 45 N. Y. 549; *Kavanagh* v. *Wilson*, 70 N. Y. 177; *Koehler* v. *Adler*, 78 N. Y. 291.) Upon the evidence, the captain of the boat was guilty of gross negligence. (*N. Y. Electrical Equipment Co.* v. *Blair*, 25 U. S. C. C. App. 216, 217, 218.) The question of contributory negligence was, under all the circumstances, one of fact for the jury. (*Krulder* v. *Woolverton*, 64 N. Y. S. R. 467; *Germann* v. *Suburban R. T. Co.*, 37 N. Y. S. R. 360; 128 N. Y. 681; Wells on Questions of Law & Fact, § 265; *Lee* v. *Troy C. G. L. Co.*, 98 N. Y. 115; *Chisholm* v. *State*, 141 N. Y. 246; *Greaney* v. *L. I. R. R. Co.*, 101 N. Y. 419; *Feeney* v. *L. I. R. R. Co.*, 116 N. Y. 375; *Stackus* v. *N. Y.*

*C. & H. R. R. R. Co.*, 79 N. Y. 464.)   The evidence of custom or usage cannot avail to change defendants' liability under the law.   ( *Walls* v. *Bailey*, 49 N. Y. 474 ; *Wright* v. *Boller*, 42 Hun, 80 ; *Hopper* v. *Sage*, 112 N. Y. 530.)

PARKER, Ch. J.   The plaintiff was injured by the falling of a heavy tank, which was being unloaded from a lighter at Newark, New Jersey.   As the record comes to us it must be deemed established that the accident was due to the negligence of the captain of the lighter, and the question demanding decision by this court is: Are these defendants responsible for the conduct of the captain ?

The defendants were the owners of the lighter, but they claim that at the time of the accident and for some time prior thereto, she was in the possession of one Schoenewolf under a charter which gave to him the absolute control of the lighter, together with its captain and his mate    There is of course no question but that if the defendants by their agreement with Schoenewolf, had in fact given him possession and absolute control of the boat and its men until he should have accomplished the work for which he engaged her, then the captain in what he did was acting as the servant of Schoenewolf and not of the defendants.   This brings us to an examination of the evidence relating to the nature of the contract.   One of the defendants, Boyer, testified that Schoenewolf called at his office some time in February, 1893, and " asked me if I would transport some goods for him from somewhere up the East river to Newark and what it would cost.   I inquired from him the nature of the goods, and he said that he was moving a brewery, or part of a brewery, from there to Newark ; he could not tell me the exact nature of the goods, nor could I give him any price then.   Then he agreed with me to charter — Objected to as a conclusion.   The Court: What was said ? A. Then I proposed to him that I would charter him a boat by the day, furnished with two men, and he paying all expenses for taking charge of the boat.   He wanted to know

13

what that would cost and I told him fifteen dollars per day. He wanted to know what the towing would be and I told him I could not tell that, to find that out for himself, or I told him what we charged, and he agreed to it. On the 13th of February — Q. One moment; what did he say, *yes* or *no* to the proposition? A. He said he agreed to it, and then he told me he would send men to where this freight was coming from to take charge of the lighter, and also to take charge of her when the stuff that she had on was delivered. I asked him, but he could not exactly tell me, what the class of goods were; he said they were brewery goods and some heavy weights * * * my proposition, which he agreed to, was to furnish him the boat and two men at fifteen dollars per day, and he was to do his own towing. He was to do all the work necessary to carry his goods, outside of my furnishing the boat — charter the boat from me."

The barge was taken by Schoenewolf on the 13th day of February and was returned to defendants in the latter part of March.

This evidence is wholly undisputed, and it shows that the defendants, owning this lighter and employing the men in charge of her by the month, were applied to by Schoenewolf to transport certain articles from New York to Newark, which they refused to do, but instead offered to charter the boat to Schoenewolf at $15 per day, which was to include the services of the two men in charge of her. This proposition was accepted and the contract was subsequently carried out by the parties. Notwithstanding this uncontradicted testimony the trial court submitted to the jury the question, whether the contract between the parties was of the character described in the testimony of the defendant Boyer. The majority of the Appellate Division sustains this action of the trial court. The method of reasoning by which this result is reached is, in substance, that as presumptively the boat, captain and mate continued to be under the control of the defendants, the burden was upon them to establish the existence of the contract demising the vessel to Schoenewolf, and that such con-

tract was still in force at the time of the injury to the plaintiff. The next step taken consists of the assertion that the only evidence to be found in the case as to the terms of the contract was given by the defendant Boyer, who was an interested party, and, therefore, the weight to be given to his testimony was a question for the jury, and, hence, the court did not err in submitting it to them. Without conceding that the testimony of a party is never to be taken as true by the court, but must always be presented to a jury to decide as to its truth or falsity, although it be uncontradicted and without facts or circumstances present tending to throw doubt upon it, we reach the conclusion that the testimony of the defendant was so far corroborated that the court was bound to accept it as true. Before referring to the corroborating testimony, mention should be made of the fact that there is not present in this record any fact or circumstance throwing discredit on the testimony of Boyer as to the nature of the contract with Schoenewolf.

The testimony of the defendant Boyer seems to us to have substantial corroboration. In the first place the plaintiff introduced in evidence the receipted bill which the defendants had presented to Schoenewolf. It reads as follows:

"NEW YORK, <em>March 15th,</em> 1893.

"Mr. P. SHONEWOLF

"To L. BOYER's SONS, Dr.

" Lighterage and Transportation
   " Steam Lighters & Barges.
      " 90 Wall Street.
• Chas. H. Boyer.
" Frank W. Boyer.

| "Date | Cargo from | To | Articles | |
|---|---|---|---|---|
| "Balance due for month Feb'y.......... | | | $168.00 | |
| "To charter barge James F. from March | | | | |
|    1st to March 15th, at $15 per day.... | | | 225.00 | |
| "Watching barge 17 nights & Sunday.... | | | 17.00 | |
| | | | | $410.00 |

"To charter barge James F. from March
        16th to March 19th '93, at $15 per
        day.   Watching.................          $48.

                                              $458.00
                "Paid,
                        "L. BOYER'S SON.
                "W. Haferstock,
                        "Labor, $14."

It would seem ·from this bill that a previous bill had been
presented covering the portion of the month of February dur-
ing which Schoenewolf had had possession of the lighter.
After stating the balance due for the month of February, the
next item is :

"To charter barge James F. from March 1st to
        March 15th, at $15 per day................ $225.00."
        There is another item in the bill :

"To charter barge James F. from March 16th to
        Mar. 19th, 1893, at $15 per day............ $48.00."

We find it distinctly stated, therefore, in the bill which
Schoenewolf accepted and paid, that defendants did charter to
him the barge for the sum of $15 per day.   It constitutes a
brief summary of the contract itself, as stated by the defend-
ants.   The receipt is certainly not subject to criticism by the
plaintiff, for he presented it to the court, having presumably
obtained it from Schoenewolf, into whose possession it went
after payment to the defendants of the sum therein stated to
be due.   If further corroboration than this of the uncontra-
dicted testimony of a party be required in order to take away
from a jury the power to say there was no such contract, but
that some other contract of which the testimony contains no
hint whatever was really made, then surely parties to actions
have failed to secure all the benefits it has been supposed
accrued to them under the statute authorizing them to testify
in their own behalf.   But there is still further corroboration.
John Lang, the defendants' superintendent, testified that he
was present at the making of the contract between the Boyers
and Schoenewolf.   To a question he answered : "I think I

saw him when he came into the office and made the contract with Frank W. Boyer. I was present when the contract was made. I have heard Mr. Boyer's testimony about it. I heard Mr. Boyer make the proposition to Schoenewolf to take the boat and the two men by the day. Mr. Schoenewolf said he accepted the proposition, and I think he said, ' I will let you know to-morrow morning when I want the boat and where.' "

This is certainly most substantial corroboration. The witness asserts his presence at the time the contract was made, about which Boyer had testified in the presence of the witness, and that he heard Boyer make the proposition to Schoenewolf to take the boat and the two men by the day, and that Schoenewolf accepted it.

But the respondent's counsel insists that on his cross-examination the witness' testimony was substantially broken down. The portion of the cross-examination referred to reads as follows: " I had never seen Mr. Schoenewolf before that day. I am able to say that it was Mr. Schoenewolf that came into the office, because he introduced himself. I heard him do that. That is all I know about it." (Referring, of course, to his reason for knowing that it was Schoenewolf, not to his knowledge of the contract.) " I had not seen him before or since. I would not know him now if I saw him. He was a stranger to me. All I mean to tell this jury is that some man, who was a stranger to me, came in and spoke about hiring a boat, and then Mr. Boyer told him what the terms were, and then the man said, I will let you know to-morrow morning; something of that description." Whatever there was of hesitation or doubt in the testimony of this witness clearly referred to the question as to how he knew that the person who made the contract with Boyer was Schoenewolf. But we need not stop to analyze the testimony of the witness to see whether or not the value of the direct testimony was cut down by the cross-examination. It is quite sufficient for the present examination that it appears that the testimony of this witness and the receipt, taken together, corroborated the testimony of the defendant Boyer in every material respect touching the nature

of the contract between the defendants and Schoenewolf. And such being the case, the court was not at liberty, in the absence of contradictory evidence, to submit it to the jury to find whether there was not an entirely different contract, under which the defendants retained the control of the boat, the captain and the mate.

Counsel for the respondent insists, however, that, assuming the contract to be as stated in the testimony of Boyer, still it was for the jury to say, in view of all the testimony, whether the owner parted with all possession, authority and control over the vessel and its crew. The foundation for this claim is an alleged ambiguity in the contract, as testified to by Boyer, and, therefore, it is urged that the subsequent conduct of the parties while the contract was in process of execution could be invoked for the purpose of ascertaining what the parties really intended. The difficulty in considering this proposition is that the alleged ambiguity is not pointed out, and we have been unable to find it. But, assuming its existence, we note that respondent's next position is that certain action was taken by defendants during the time this boat was in possession of Schoenewolf, which indicated that the defendants had not divested themselves of all control over the captain. The impression received from the argument is that the Boyers were asserting the right of control generally over the captain and the lighter, but an examination of the evidence discloses that after Schoenewolf took possession of the boat the defendants' superintendent went to the dock, where the boat was to load, to ascertain if she was safely there, and if everything was all right with her. There is no hint of an attempt on the part of the superintendent to control the use of the boat or the action of the captain or the mate. It seems not at all remarkable that people engaged in the business of chartering lighters and other boats should, from time to time, have inquiry made as to their condition.

Apparently the boat was unexpectedly laid up for a considerable time, nearly a month, in consequence of the ice, and so one of the defendants went to Newark, where she had

gone to unload, to see what had become of her, and while there, seemingly becoming uneasy about their bill, which had grown quite large, he told the captain to collect it and not to allow the goods to be removed until the bill was paid. In no other way did the defendants exercise any control over the boat or its captain from the 13th of February until the latter part of March. What the owners did attempt to do does not seem to be in the slightest degree inconsistent with the absolute demise of the control of the boat for the period necessary for putting on, shipping and taking off the articles which the boat was selected to transport.

It may well be that the captain still owed to these defendants the duty of navigating the vessel carefully, but that Schoenewolf, under this contract, had the right to retain the possession and control of her so long as it should be necessary to move the materials which he had chartered her to move, is beyond question, and it is equally true that during such time he had the right to control both the captain and the mate in loading and unloading the vessel. If more than two men had been needed, either to load or unload, Schoenewolf, and not the defendants, would have had to employ them. As matter of fact more men were required and were employed by Schoenewolf, the charterer, and certainly nowhere in the contract as testified to, can there be found a basis for charging that the defendants had anything whatever to do with the loading or unloading of this boat, or the right to control it. Nor did they in fact attempt to control or interfere with it, and being under no obligation to load or unload the boat, or to direct it, or to supply persons or materials necessary to do so, the neglect of the persons employed in the discharge of that duty is not chargeable to the defendants, but to Schoenewolf, the charterer, under whose direction they worked and whose servants for the purpose of unloading the materials they were.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except GRAY, J., dissenting.

Judgment reversed, etc.