SARGENT PAINT COMPANY *v*. PETROVITZKY.

[No. 9,927. Filed November 20, 1919.]

1. MASTER AND SERVANT.—*Injuries to Third Persons.—Negligence of Servant.—Determination of Relation.*—Where the owner of a motor truck, by oral arrangement, furnishes the truck and its driver to another by the week, for the purpose of delivering goods sold by such other, and the driver negligently injures a third person while making such deliveries, the true test in determining who the master was, is, who had the right to control and direct the servant in the performance of the work. p. 359.

2. MASTER AND SERVANT.—*Injury to Third Persons.*—*Relation of Master and Servant.*—*Question for the Jury.*—Where the owner of a motor truck by oral arrangement rents the truck with a driver to another at a fixed weekly rental, to be used in making deliveries of goods sold by such other, and retains and exercises no control over the process of delivery, and the driver negligently injures a third person while making such deliveries, the question of who is the master liable for the injury is one of fact for the jury. p. 368.

3. MASTER AND SERVANT.—*Injury to Third Person.*—*Action.*—*Relation of Master and Servant.*—*Evidence.*—In an action for injuries to a third person negligently caused by the driver of a motor truck, who together with the truck was furnished by the owner of the truck to the defendant at a fixed sum per week, to be used in delivering goods sold by it, and were actually so engaged when the injuries were inflicted, where the owner of the truck gave no orders at any time relative to said deliveries, nor as to the method, process or routing of the same, and where the driver made the deliveries from sales slips and orders received from the shipping clerk of defendant, *held* to sustain the verdict in so far as concerns its included finding that the driver at the time of the injury was the servant of defendant. p. 370.

From Marion Superior Court (100,789); *W. W. Thornton,* Judge.

Action by Pearl Petrovitzky against the Sargent Paint Company and another. From a judgment for the plaintiff against the named defendant only, such defendant appeals. *Affirmed.*

*Charles E. Henderson,* for appellant.
*Beckett & Beckett,* for appellee.

McMAHAN, J.—This action was commenced by appellee against the appellant and Roy Perkins to recover damages for personal injuries caused by appellee being struck and run over by a motor truck driven by one Harold Hays, who was alleged to have been the servant of appellant and Perkins. There was a verdict in favor of appellee against appellant, and in favor of Perkins, upon which judgment was rendered. Appellant filed a motion for a new trial, for the reasons that the verdict of the jury is not sustained by

sufficient evidence, is contrary to law, and that the court erred in giving, and in refusing to give, certain instructions. The error assigned is the overruling of the motion for a new trial.

This cause involves the question as to when a servant in the general employment of one person becomes, with regard to a particular transaction, the servant of another. Perkins owned the truck, kept it in repair, bought the oil and gasoline therefor, and employed Harold Hays to drive it. Hays was a chauffeur by occupation, and had been driving the truck three or four years prior to the time of the accident.

Appellant owned and operated a factory for making paint, also had a store where it sold paint at retail. About two years prior to the time of the accident appellant and Perkins entered into an oral arrangement, whereby Perkins was to furnish appellant a truck and driver for the purpose of delivering goods for appellant. Appellant was to, and did, pay Perkins $35 a week for the use of the truck and driver. The exact nature of this arrangement is not clearly disclosed by the evidence. Mr. Perkins testified that he had two trucks, one of which he drove for the Stewart-Carey Glass Company, and the one which Harold Hays drove. When asked to state what arrangement he had with the appellant in connection with the delivery of its goods he said: "My arrangement with Mr. Sargent was to do the delivering for so much a week and furnish him a truck and driver. I hired the drivers, paid them and discharged them. I paid for the repairs on the truck, and for the gasoline and oil used in running it. Harold Hays drove the truck for the Sargent Paint Company. They directed him on his deliveries. The only directions I

gave him was to report to the Paint Company and after that I exercised no authority over him at all unless I wanted him to do something. I gave him no directions about his paint orders.''

Harold Hays testified that Perkins hired him and agreed to pay him $15 a week. Perkins told him that he had made arrangements with the appellant to furnish appellant with a truck and driver and deliver goods for them, for which he (Perkins) was to receive $35 a week. The witness was asked whether or not Mr. Perkins told him that he (Hays) would receive orders what to do, that they would consist of sale slips and that he (Hays) could route himself and deliver to the best advantage to take up the least time according to the sale slips, to which he answered: ''No Sir, he did not tell me anything in regard to that because I was to learn that when I got there.'' He also testified that Perkins told him that the appellant would show him the process of the work; that, when he got there each morning, he found there were sale slips made out of goods to be delivered; that he and the shipping clerk placed the goods in the car to the best advantage in making deliveries so as not to cover the ground twice. In making the deliveries no one gave him any orders to go a certain way. He was left to his own discretion in routing himself. When he made a delivery he would return to the appellant's place of business and wait until other orders came in or until something was wanted from the warehouse, and that he went over to the warehouse for stock nearly every morning. Sale slips were made out for each delivery, indicating to whom and where the delivery was to be made. When making c. o. d. deliveries he collected the money and

turned the same over to appellant. He would know where to deliver the goods by the bill of sale, and would wait until the shipping clerk gave orders what to do. He obeyed these orders, and obeyed the orders of any one around the store, but did not obey orders of anybody except some one connected with the store. Sometimes he would haul things for the men there. He hauled a cabinet for one of the salesmen for his garage, and he hauled things for Mr. Sargent.

When asked what directions he received from Perkins when he first went to work with the paint company, and in testifying what Perkins said to him, he said: "He told me that they would show me the process of the work when I got to the Sargent Paint Company." He kept the truck at his home except in bad weather when he kept it at the garage; that he was required to be at appellant's store each working day of the week at seven o'clock in the morning and was required to deliver and haul anything he was asked to haul for the appellant. Sometimes at the request of Mr. Perkins he would drive the truck on Sundays and take people to picnics and different places, this being at times outside of which he was required to be at appellant's place of business. The name of appellant was painted on the truck.

The bookkeeper of appellant testified: "We had a contract with Perkins. He was to look after the delivering and see that our goods were delivered about the city for which we paid him $35 a week. Roy Perkins' name was on the payroll. Harold Hays' was not."

Lambert Mack, appellant's order clerk, testified that: "Perkins was hired to do our hauling. I would get my orders in rotation and hand them to Hays, and

he would load and deliver them. I never told the direction in which he was to go or where he should go or how he should go. I handed him the orders and he delivered them. The orders were written, never gave any directions by word of mouth. The orders that were sent out by Hays were for goods we had sold and contracted to deliver. When the orders were gotten up I gave him a written slip. He would collect c. o. d. orders and bring in the money. When we had so many orders that I could not take care of them all with the truck, I would hire another wagon.''

This is in substance all of the evidence throwing any light upon the nature of the agreement between the appellant and Perkins, and the method used in carrying it out and in carrying on the business of appellant in so far as the use of the truck and driver and the delivering of goods sold by appellant. Appellee was injured by reason of the negligence of Hays in driving the truck in question while delivering paint sold by appellant. The said arrangement between appellant and Perkins had been in existence about three years at the time of the accident, during all of which time Hays drove the truck, except for short periods when, for some reason not disclosed by the evidence, Perkins would send another driver to take his place.

Appellant in its brief says that all of the errors relied upon for a reversal can be determined by ascertaining whether Hays was the servant of appellant or of Perkins.

Appellant says that the question of what constitutes an independent contractor is ordinarily one of

mixed law and fact, but that where the evidence is oral and is sufficient to establish the existence of some relation, and where it is uncontradicted and susceptible of but a single inference, the question of what relation is thereby shown to exist is one of law and that, under the evidence in this case Hays, as a matter of law, was the servant of Perkins and not of appellant. Appellee insists that the question as to whose servant Hays was, at the particular time he inflicted the injuries upon appellee, was, under the evidence, a question of fact for the jury, and not a question of law.

The rule that one who employs a servant to do his work is answerable to strangers for the negligent acts or omissions of the servant committed in the 1. course of the service is elementary. But, however, clear as the rule may be, its application to the varied affairs of life is not always easy, as the facts which place a given case within or without the rule cannot always be ascertained to a certainty. When the attempt is made to impose upon the master the liability for the consequences of the servant's neglect, it sometimes becomes necessary to ascertain who was the master at the very time of the negligent act or omission. One may be in the general service of another and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation. The true test in determining who the master is, in a case of this character, is not who actually did control the actions and movements of the servant in doing the work, but who had the right to control.

If appellant was not the owner of a truck and did not have any person in its employ who could do its hauling and delivering, it had the right to enter into an agreement with Perkins to furnish a truck and man to do this work. If in this case Perkins furnished the truck and driver to do appellant's work and placed the driver, Hays, under the control of appellant in the performance of that work, Hays became *pro hac vice* the servant of appellant. But, on the other hand, if the agreement was that Perkins should himself do the work for a consideration, with servants of his own selection, retaining the direction and control of such servants, he would be the master and liable for the negligent acts of such servant in doing the work, though the work was being done for the ultimate benefit of appellant. In determining who is the master, we must inquire whose is the work being performed. As before stated, this is answered by ascertaining who has the power to control and direct the servant in the performance of the work. The rule just stated is sustained by the great weight of authority, although the language used in stating the rule may not always be the same.

In the case of *Higgins v. Western Union Tel. Co.* (1898), 156 N. Y. 75, 50 N. E. 500, 66 Am. St. 537, where a similar question was under consideration, the court stated the rule as follows: "The question is whether, at the time of the accident, he was engaged in doing the defendant's work or the work of the contractor. * * * The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct." This test and rule has been applied and followed in many cases. Among them are *Parkhurst v. Swift* (1903), 31 Ind.

App. 521, 68 N. E. 620; *Indiana Iron Co.* v. *Cray* (1898), 19 Ind. App. 565, 48 N. E. 803; *Standard Oil Co.* v. *Anderson* (1909), 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480; *Kilroy* v. *Delaware, etc., Canal Co.* (1890), 121 N. Y. 22, 24 N. E. 192; *Wyllie* v. *Palmer* (1893), 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285; *Anderson* v. *Boyer* (1898), 156 N. Y. 93, 50 N. E. 976; *Murray* v. *Dwight* (1900), 161 N. Y. 301, 55 N. E. 901, 48 L. R. A. 673; *Delaware, etc., R. Co.* v. *Hardy* (1896), 59 N. J. Law 35, 35 Atl. 986; *Consolidated Fireworks Co.* v. *Koehl* (1901), 190 Ill. 145, 60 N. E. 87; *Grace & Hyde Co.* v. *Probst* (1904), 208 Ill. 147, 70 N. E. 12; *Kimball* v. *Cushman* (1869), 103 Mass. 194, 4 Am. Rep. 528; *Johnson* v. *Boston* (1875), 118 Mass. 114; *Delory* v. *Blodgett* (1904), 185 Mass. 126, 69 N. E. 1078, 64 L. R. A. 114, 102 Am. St. 328; *The Elton* (1906), 142 Fed. 367, 73 C. C. A. 467.

"The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused the injury, and that such person alone is liable. The case of master and servant is an exception to the rule, and the negligence of the servant, while acting within the scope of his employment, is imputable to the master. * * * The fact that the party to whose wrongful or negligent act an injury may be traced was, at the time, in the general employment and pay of another person, does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct. Servants who are employed and paid by one person may, nevertheless, be *ad hoc* the servants of another in a particular transaction, and that, too, when their general em-

ployer is interested in the work.  *  *  *  The true test in such cases is to ascertain who directs the movements of the person committing the injury.'' *Higgins* v. *Western Union Tel. Co., supra.*

In *Foster* v. *Wadsworth-Howland Co.* (1897), 168 Ill. 514, 48 N. E. 163; id., 50 Ill. App. 513; id., 60 Ill. App. 600, cited by appellant, the question under consideration was whether an instruction directing a verdict for the defendant was erroneously given. The court said: ''The driver of the wagon which caused the injury *was not an employee of appellee* nor *subject to its orders, but was under the control* and *in the employ of Smiddie. Smiddie contracted to do the hauling, which* contract necessarily carried with it the duty to employ such assistants as might be required. His relationship with appellee was therefore in the nature of a contractor, rather than servant.  *  *  * Appellee exercised no control over the driver of this wagon; it did not employ him; it did not pay him; it had no right to discharge him, nor had it the right to direct how or in what manner his work should be done, further than it should conform with its agreement made with Smiddie. Under the circumstances the driver of the wagon was not the servant of appellee, and, consequently, there could be no liability against it.''  (Our italics.)  The court based its decision on the case of *Wood* v. *Cobb* (1866), 13 Allen (Mass.) 58, where the plaintiff was struck by a wagon driven by one Wheeler, whose wagon had just left the place of business of the defendants loaded with their goods. The court further said: ''It developed that the defendants *contracted* with one Foster to deliver *all* their goods, and Foster, being sick, had asked permission to have Wheeler drive his wagon.

(Our italics.) * * *. 'The testimony of the witness introduced by the defendants would warrant no other inference than that the person who was in charge of the horses and wagon at the time the injury was done to the plaintiff was not in the employment or service of the defendants, but was acting as a servant of the third person, who exercised an independent employment in no way subject to the command or control of the defendants as to the method in which it should be carried out.' "

In *Burns* v. *Michigan Paint Co.* (1908), 152 Mich. 613, 116 N. W. 182, 16 L. R. A. (N. S.) 816, the only evidence to show that the driver was a servant of appellee was the fact that appellee's sign was attached to the wagon. The court held that the undisputed evidence showed that the driver of the wagon was an independent contractor, and that under such circumstances there could be no recovery as to the paint company.

In *Tuttle* v. *Embury, etc., Lumber Co.* (1916), 192 Mich. 385, 158 N. W. 875, Ann. Cas. 1918C 664, the appellant furnished his own team and was hauling lumber at a fixed price per thousand. In discussing the question, the court said: "In some cases much stress is laid upon the fact that the work to be performed is of an indefinite amount subject to discharge and control in that regard. Others, whether the employment is of a general, independent character, like that of draymen and common carriers, becomes the controlling question. We are of the opinion that the test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between the independent contractor and a servant or

agent. * * * In our opinion there was such control over the work of Tuttle, by the company, as makes it inconsistent to say that Tuttle was an independent contractor. His work was limited by the right of the company to terminate it at any time, and it was for no definite period or amount. * * * The most that can be said for the respondents is that, upon the evidence in the record, *it might be for a jury to say*, under proper instructions, whether the company participated and directed in the work of Tuttle to such a degree that the relation of master and servant existed, or whether he was an independent contractor. * * * *Whether or not the relation of master and servant exists in a given case, under oral contract, is often a question of fact, or of mixed law and fact, and is to be proved like any other question.* (Our italics.)

In *W. S. Quinby Co.* v. *Estey* (1915), 221 Mass. 56, 108 N. E. 908, the court said: "It was for the jury to say what the contract of the parties was and what conclusions should be drawn from the evidence concerning the relation of Day to the plaintiff and to the defendant. * * * The jury were authorized to find that Day was the servant of the defendant and not the servant of the plaintiff." In this case, the appellant hired to appellee a horse and wagon and driver for the sum of $29 per week to deliver merchandise for the plaintiff. The driver, Day, through his negligence, lost certain property belonging to the plaintiff. The action was brought by plaintiff against appellee to recover the value of such property.

In *Chicago, etc., Brick Co.* v. *Campbell* (1904), 116 Ill. App. 322, appellee was injured by a collision between a street car and a wagon loaded with brick

belonging to Kimball and Dymond. The action was brought against, the appellant and Kimball and Dymond. At the close of the evidence the cause was dismissed as to Kimball and Dymond. There was a verdict and judgment against appellant. Along with the general verdict, the jury answered certain interrogatories, the fourth reading as follows: " 'Was Mohr, the driver of the wagon in question, the servant and agent of the above-named defendant (Chicago Hydraulic Press Brick Co.)?' " Answer, " 'Yes.' " Kimball and Dymond were partners engaged in the business of teaming for others. At the time of the accident, and for several years prior thereto, they had an oral contract with the brick company to do its teaming at its west yards, where the wagon causing the injury to appellee was loaded. Under this contract appellant paid Kimball and Dymond a certain price per load of brick. The wagons and horses were kept at appellant's yards, but they were maintained by Kimball and Dymond, and in charge of their employes. The driver of the team, Mohr, was employed and paid by Kimball and Dymond. The trial court refused to instruct the jury to return a verdict for the defendant. Held not error. Appellant contended that the court erred in submitting certain interrogatories, including the fourth, to the jury. The court, in discussing these interrogatories, said: "The third interrogatory relates to an ultimate fact in the case, as does also the fourth, when the whole evidence is considered. It was not, in our opinion, error to submit these questions to the jury, since there was evidence to justify them and they relate to ultimate facts."

*Driscoll* v. *Towle* (1902), 181 Mass. 416, 63 N. E.

922, was an action by Driscoll against Towle for personal injuries caused by being struck by a horse and wagon driven by one Keenan. The court directed a verdict for the defendant. The only question was whether there was any evidence that Keenan was the servant of Towle. Towle was engaged in general teaming. He owned the horse and wagon, and employed Keenan and paid him his wages. For some time Keenan had been carrying property for the Boston Electric Light Company under some arrangement between the latter and Towle. Early in the morning of each day Keenan took the horse and wagon from Towle's stable and reported to the light company. An employe of that company gave him his orders as to what to do, and where to go, and he spent the day in carrying out those orders. The court, in discussing the evidence and the action of the court, said: "We are of the opinion that these facts are at least evidence that Keenan was the defendant's servant. * * * At the most it was for the consideration of the jury and did not justify directing a verdict for the defendant as matter of law."

In *Foster* v. *City of Chicago* (1902), 197 Ill. 264, 64 N. E. 322, the city entered into a written contract with John Sheehy, providing that Sheehy should furnish all the labor and materials and do all the work necessary to fully complete a certain sewer. John Shea was a laborer employed by Sheehy on said work, and in the course of his employment was killed. The action was commenced against the city on the theory that Shea was a servant of the city. The contract being in writing, the court correctly held that it was a question of law for the court to say whether the injured party was a servant of the city or of Sheehy.

The true test in such cases is to ascertain who directed the movement of the person committing the injury. When one person lends a servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him. *Parkhurst* v. *Swift, supra.*

Of the cases just reviewed, all of which were cited by appellant, *Tuttle* v. *Embury, etc., Lumber Co.; W. S. Quinby Co.* v. *Estey, Chicago, etc., Brick Co.* v. *Campbell,* and *Driscoll* v. *Towle* held that the question whether the driver was the servant of the defendant was a question of fact to be submitted to the jury. In *Foster* v. *City of Chicago, supra,* the contract was in writing, the construction of which was necessarily a question of law for the court.

In *Falender* v. *Blackwell* (1906), 39 Ind. App. 121, 79 N. E. 393, the court held that it was proper to submit the question to the jury, and that the verdict was supported by the evidence. In *Indiana Iron Co.* v. *Cray, supra,* the jury returned a special verdict, and appellant was contending that on the facts as found it should have judgment. In *Zimmerman* v. *Baur* (1894), 11 Ind. App. 607, 39 N. E. 299, the question arose upon demurrer to the complaint and answer. In *Marion Shoe Co.* v. *Eppley* (1914), 181 Ind. 219, 104 N. E. 65, Ann. Cas. 1916D 220, there was no conflict in the evidence, and but one conclusion could be drawn from it. In *Teagarden* v. *McLaughlin* (1882), 86 Ind. 476, 44 Am. Rep. 332, a father had let a contract to a minor son to clear a certain tract of land. The son negligently started a fire and destroyed property of another. The father when sued asked the court to

instruct the jury that he was not liable for the negligence of the son, inasmuch as the son was an independent contractor. The court held that the instruction was properly refused, on the theory that as a matter of law the minor son was under the control of his father.

Without extending this opinion in a further review of the authorities, it is sufficient to say that the courts of the country are practically unanimous in holding that under the circumstances as disclosed by the evidence in this case, the question is one of fact for the jury. *Crockett* v. *Calvert* (1856), 8 Ind. 127; *Falender* v. *Blackwell, supra; Kawneer Mfg. Co.* v. *Kalter* (1918), 187 Ind. 99, 118 N. E. 561; *Standard Oil Co.* v. *Allen* (1918), (Ind. App.), 121 N. E. 329; *Dalrymple* v. *Covey Motor Car Co.* (1913), 66 Ore. 533, 135 Pac. 91, 48 L. R. A. (N. S.) 424; *Lorenzo* v. *Manhatten Steam Bakery* (1917), 178 App. Div. 706, 165 N. Y. Supp. 847; *Banfield* v. *Whipple* (1865), 10 Allen (Mass.) 27, 87 Am. Dec. 618; *Consolidated Fireworks Co.* v. *Koehl, supra; Columbia School Supply Co.* v. *Lewis* (1916), 63 Ind. App. 386, 115 N. E. 103; *Decatur R. Co.* v. *Industrial Board* (1917), 276 Ill. 472, 114 N. E. 915; *Minor* v. *Stevens* (1911), 65 Wash. 423, 118 Pac. 313, 42 L. R. A. (N. S.) 1178, cited by appellant. *Howard* v. *Ludwig* (1902), 171 N. Y. 507, 64 N. E. 172; *Cain* v. *Hugh Nawn, etc., Co.* (1909), 202 Mass. 237, 88 N. E. 842; *Tuttle* v. *Embury, etc., Lumber Co., supra; Glover* v. *Richardson, etc., Co.* (1911), 64 Wash. 403, 116 Pac. 861; *McNamara* v. *Leipzig* (1917), 167 N. Y. Supp. 981; *W. S. Quinby Co.* v. *Estey, supra; Chicago, etc., Brick Co.* v. *Campbell, supra; Driscoll* v. *Towle, supra.*

What contract, as an independent contractor, did Perkins have with appellant? When would his contract with appellant be completed? Contracts are entered into for the purpose of acquiring rights on the one hand and imposing obligations on the other. Could Perkins have quit work at any time without incurring any liability to appellant? Could appellant at any time have discharged Perkins or dismissed Hays, the driver of the truck, without any legal liability to Perkins to respond in damages for breach of contract? To each of these questions upon the record there could be no liability. Hays or Perkins could have ceased to labor for appellant at any time, and the appellant had a right to dispense with their labor any time it saw fit. *Muncie Foundry, etc., Co.* v. *Thompson* (1919), (Ind. App.) 123 N. E. 196.

There is no claim that Perkins had a contract to deliver all the goods sold by appellant. When there were more orders than Hays could deliver with the truck, appellant would hire some one with a horse and wagon to help out, as testified to by the order clerk.

The work which Hays was called upon to do was not complicated, and according to the testimony of Perkins was not specifically described in the arrangement made with appellant. It did not require elaborate terms in order to exercise control over the driver of the truck while the work was in progress. No definite arrangements were made regarding the manner in which the goods were to be delivered. Perkins did not visit the scene of the work to ascertain what was to be done or how it could be performed. He did not ask any questions about the work or give any directions as to how it should be done. He was

VOL. 71—24.

not present at any time during its progress, and assumed no personal control over the same. The decision as to how and when goods should be delivered was made by appellant, and whatever directions in that regard were necessary were given by it.

We hold that, under the evidence, the question whether the driver of the truck was, at the time of the injury to appellee, the servant of appellant was properly submitted to the jury, and that the verdict is sustained by the evidence. There was therefore no error in overruling the motion for a new trial. Judgment affirmed.