## MATTHEWS v. NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY.

[No. 13,008. Filed March 15, 1928. Rehearing denied June 7, 1928. Transfer denied January 7, 1932.]

*Eggeman, Reed & Cleland* and *James P. Murphy*, for appellant.

*Howard L. Townsend, Albert P. Thomas* and *Harry H. Hilgeman,* for appellee.

NICHOLS, J.—Action in tort for personal injuries inflicted upon appellant by an assault and battery committed by detectives in the employ of appellee, while acting for and in the interest of appellee, and during the attempt on the part of such detectives to extort, by physical violence, a confession from appellant, in violation of §2420 Burns 1926, that he had knowingly received goods or property stolen from the cars of the appellee.

At the close of appellant's case in chief, the court, on motion of appellee, directed a verdict for appellee. Appellant filed a motion for a new trial, assigning as error, so far as here involved, the action of the court in reading to the jury an instruction directing a verdict for appellee. The motion for a new trial was overruled and judgment rendered upon the verdict.

It appears by the uncontroverted evidence that men's wearing apparel had been stolen from the cars of appellee company, and that the thieves had been apprehended and presumably had informed the arresting officer where disposition of the clothes had been made. The detectives, Walters and Walters, as special railroad policemen, who were commissioned under the provisions of ch. 159, Acts 1925 p. 394, §12267 *et seq.* Burns 1926, had been detailed by their superior officer to the task of investigating the thefts and to report the result of their work and investigation. In the course of their investigation, in company with a police officer of Fort Wayne, they apprehended appellant as he was returning to Fort Wayne from Michigan City. Appellant was removed from the public carrier in which he was a passenger, transferred to an automobile operated by the said railroad policemen, then taken to the police station in Fort Wayne. No arrest had been made and the officers did not have a warrant for appellant's arrest.

The crime had not been committed by appellant within the view of the officers; otherwise the investigation of his connection with the thefts would be obviated.

Upon arrival at the police station, appellant was taken into a room commonly used by the detective bureau of the police department of Fort Wayne. From this room, he was conducted by three officers into a small anteroom, specially used for the interrogation of suspects. While in this room, effort was made by all the officers to force appellant to admit that he knowingly received

stolen property. Appellant was steadfast in his denials, which enraged the officers, including the detectives, and, with violence and threats of violence, they assaulted and maltreated him from 7 p. m. until 11:30 p. m., when, as appellant says, in order to escape further punishment and, while suffering agonizing pains, he confessed.

As appears above, all of this evidence was given by appellant, appellee having tendered no evidence in its defense. It appears that the arrest was made by a police officer of the city of Fort Wayne, and that the alleged assault upon and mistreatment of appellant by the detectives was before any arrest was made, and it does not appear that either the detectives or the city policemen had any warrant for such arrest. As no crime had been committed by appellant within the view of such officers, his apprehension without a warrant and his detention, *prima facie,* were unlawful.

The questions with which we are confronted are: (1) Were the detectives at the time of the assault upon, and mistreatment of, appellant acting as public officers as distinguished from agents of appellee company? (2) Assuming that such detectives were duly appointed and commissioned, does their appointment and commission, selected and paid as they were by appellee under said ch. 159, Acts 1925 p. 394, being §12267 *et seq.* Burns 1926, and acting, at the time of the alleged trespass, under the direction of a superior officer of appellee, give to appellee absolute and complete immunity for the acts of such agents, whether committed within the scope of their authority or not? (3) Is it a question for the jury to determine whether the act or conduct of such agent complained of was committed within the scope of the railroad's business?

In *Gwinn* v. *Hobbs* (1917), 72 Ind. App. 439, 456, 118 N. E. 155, Id., 83 Ind. App. 263, 141 N. E. 812, 144 N. E. 648, this court held that, in passing upon a motion to di-

rect a verdict, it was the duty of the court to consider only the evidence favorable to the party against whom the instruction was sought, to exclude all evidence in conflict therewith, to treat all facts which such evidence tended to prove as true, and to indulge every inference in favor of the party against whom the instruction was sought which the jury might reasonably draw.

In *Gasco* v. *Tracas* (1927), 85 Ind. App. 591, 155 N. E. 179, we stated the rule as follows: "It is a well-established rule of law that it is only when the evidence upon any question is undisputed, and only one legitimate inference can be drawn therefrom that the court has a right to direct the verdict. If there be any evidence whatever having legal weight, or any legitimate inference from the evidence tending to support appellant's right to recover, the question should have been left to the jury. *Kearns* v. *Burling* (1896), 14 Ind. App. 143, 42 N. E. 646."

In this case, appellant proved that appellee, in operating its railroad and for the protection of its property, employed the detectives here involved as special policemen; that they were in the charge of a superior officer of the company; that their activities and duties were confined to appellee's premises; that they were ordered by such superior officer to investigate appellant, which they did; that, in so investigating him, they committed the trespasses complained of in this action; that they were paid for their services by appellee; that it was their duty to report their work to their superior officer, and that they reported their investigation of Matthews to such officer. We are clear that, under this state of the evidence, a case for the jury was made, and that the court erred in directing a verdict for appellee. In *Sargent Paint Co.* v. *Petrovitsky* (1919), 71 Ind. App. 353, 124 N. E. 881, this court, speaking by Mc-

Mahan, J., held that the rule that one who employs a servant to do his work is answerable to strangers for the negligent acts or omissions of such servant committed in the course of his employment is elementary, that, in determining who is the master, inquiry must be made as to whose work is being performed, and that such question is answered by ascertaining who has the power to control and direct the servant in the performance of his work. In the instant case, the investigation here involved was made by appellee's detectives under the direction of appellee's superior officer.

It is the appellee's contention that, because the detectives were appointed by the State, they were public officers, being special policemen under the statute, and that, therefore, appellee was absolved from all liability on account of their misconduct. This contention of appellee is fully met by the court's holding in *Dickson* v. *Waldron* (1893), 135 Ind. 507, 34 N. E. 506, 35 N. E. 1, 24 L. R. A. 483, 41 Am St. 440. In that case, appellants were operating a theatre in Indianapolis; they petitioned the metropolitan board of police of the city for police powers for one Kiley, which petition was granted, and the pay of Kiley was assumed by appellants; Kiley, while on duty as special policeman at appellants' theatre, assaulted one Waldron and injured him, such assault being made by Kiley before the arrest of Waldron. It was there contended that Kiley, being a special policeman, appellants were absolved from liability on account of his conduct. In passing on this contention, the Supreme Court says: "Indeed, no rule is better established than that a principal is responsible for the acts of his agent performed within the line of his duty, whether the particular act was or was not directly authorized, and whether it was or was not lawful. *Evansville, etc., R. R. Co.* v. *McKee*, 99 Ind. 519; *Pennsylvania Co.* v. *Weddle*, 100 Ind. 138; *American*

*Express Co.* v. *Patterson,* 73 Ind. 430; *Lake Shore, etc., R. W. Co.* v. *Foster,* 104 Ind. 293. . . .

"But it is said that John M. Kiley was a policeman, and therefore appellants are not responsible for his attack upon appellee. Whether, at the time of the injuries complained of, Kiley was acting as a policeman or as agent of appellants must depend upon the acts done by him. Because he was a police officer, it does not follow that all of his acts were those of a policeman; and because he was agent of appellants, it does not follow that all his acts were those of such agent. Even if he were a regular patrolman, called in off the streets by appellants or their agents to aid in enforcing the regulations of the theatre, he would, for such purpose, be only an agent of appellants, and for his conduct as such agent, within the scope of his employment, appellants would be responsible. . . . Besides, the evidence given by both appellants and appellee showed unquestionably that all the injuries received by appellee were inflicted upon him before he was arrested."

The case of *Grand Rapids, etc., R. Co.* v. *King* (1908), 41 Ind. App. 701, 704, 83 N. E. 778, is to the same effect. There, one Barr, while acting as a special policeman, in the employ of the railroad company, committed the tortious acts complained of, and this court, speaking by Myers, J., held that: "Where the acts appear, as they do from the pleading before us, that Barr was employed by appellant, and had authority from appellant to arrest all persons who had purloined, stolen or destroyed any of the latter's property, and that said Barr, while so acting, and within the scope and line of his employment, and without a warrant or without any authority at law, and without any criminal offense being committed by appellee within his view or presence, unlawfully, maliciously and by force seized, arrested and imprisoned appellee in the city prison of Portland, Indiana, and

while so engaged in making said arrest brutally beat and assaulted appellee, together with the allegation that said seizure and arrest and imprisonment were caused by the appellant, through its agents, servants and detectives while acting within the scope of their employment, they sufficiently show that the tortious acts complained of and which resulted in damage to appellee, grew out of appellant's employment of Barr, and were committed by the latter in the performance of his duties in the furtherance of appellant's interests, and therefore are attributable to appellant. And this is so whether the wrongful acts were authorized by appellant or not. (Citing authorities.) . . . From the evidence it may be said that Barr was acting under instructions from appellant to investigate a supposed felony 'and to locate the guilty party,' and was so engaged when he accused appellee of having the company's money. . . . Whether as special police or as a detective, his general employment afforded him the opportunity which he used in committing the tortious acts on appellee. In cases of this character the law holds the corporation liable for the acts of its servants committed within the general scope of their employment."

As in *Dickson* v. *Waldron, supra,* so here, whether the detectives were acting as policemen or as agents of appellee must depend upon the acts done by them, and under whom such acts were performed. These questions were clearly for the jury. Neither the *Dickson Case* nor *Grand Rapids, etc., R. Co.* v. *King, supra,* has been overruled, and, while they antedate the statute under which appellee seeks immunity, we find nothing in the statute that abrogates the rule of law in each of these cases announced. Authorities from other jurisdictions, some of which with statutes in effect similar to ours, are: *Seymoure* v. *Director General* (1923),

290 Fed. 291; *Kusnir* v. *Pressed Steel Car Co.* (1912), 201 Fed. 146; *Sharp* v. *Erie R. Co.* (1906), 184 N. Y. 100, 76 N. E. 923, 6 Am. Cas. 250; *Deck v. Baltimore, etc., R. Co.* (1905), 100 Md. 168, 59 Atl. 650, 108 Am. St. 399; *St. Louis, etc., R. Co.* v. *Hackett* (1894), 58 Ark. 381, 24 S. W. 881, 41 Am. St. 105; *Terry* v. *Burford* (1914), 131 Tenn. 451, 175 S. W. 538, L. R. A. 1915 F 714; *Dellabello* v. *Central R. Co.* (1924), 99 N. J. Law 348, 124 Atl. 59; *Cook* v. *Michigan Central R. Co.* (1915), 189 Mich. 456, 155 N. W. 541.

The above authorities and numerous others are cited in appellant's brief, but appellee has not seen fit to attempt in any way to discuss them further than to say that such cases were where a special policeman was acting in a dual capacity, or else where the police officer was expressly directed by some one to do a certain thing, or where his act was directed and ratified by a superintendent. In these regards, the cases cited by appellant are not to be distinguished from the case at bar. Appellee has, however, cited authorities from other states having statutes similar to the Indiana statute, in which a contrary doctrine seems to be announced. But from our review of the authorities, we are satisfied that the great weight of authority is against appellee's contention. Certainly, we have no occasion to criticise the Indiana authorities above mentioned and quoted. The first case cited by appellee, and from which it quotes, is *New York, etc., R. Co.* v. *Fieback* (1912), 87 Ohio St. 255, 100 N. E. 889, 43 L. R. A. (N. S.) 1164. It was there held that anyone who claims that the officer was not acting officially and in the line of his duty must show affirmatively that such was the case. But, in the instant case, there was evidence from which, to say the least, an inference might be drawn that the detectives were acting under the employment and direction of appellee, though with a commission from the State. In

addition to the evidence mentioned above, there is evidence that, having located the property which had been stolen, they did not pursue appellant further, but left the matter of his arrest to the Fort Wayne police officer. In *Pennsylvania R. Co.* v. *Deal* (1927), 116 Ohio St. 408, 156 N. E. 502, the Supreme Court of Ohio, after stating that in 35 A. L. R. 645, there is found an exhaustive annotation on the liability of private corporations for false arrest and imprisonment caused by their agents or servants appointed by public authority, quotes with approval from 6 Labatt, Master & Servant (2d ed.) §2477, where the author says: "In every instance, therefore, the liability of the defendant is a question of fact, to be determined by the jury under appropriate instructions." We are constrained to hold that the court erred in sustaining appellee's motion to instruct, and in instructing, the jury to return a verdict for appellee.

Judgment reversed, with instructions to the court to grant a new trial.