John Dodson **LITTLETON**, Plaintiff-Appellant,

v.

Lino **MARDIGAN**, d/b/a Moon's Motor Service, and John O'Brien, Defendants-Appellees.

No. 71-1132.

United States Court of Appeals, Seventh Circuit.

March 30, 1972.

David W. Foley, Indianapolis, Ind., for plaintiff-appellant.

Howard J. DeTrude, Jr., John N. Thompson, Kightlinger, Young, Gray & Hudson, Indianapolis, Ind., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

John Dodson Littleton brought this diversity action against Lino Mardigan, d/b/a Moon's Motor Service (Mardigan) and John O'Brien. Plaintiff sought re-

covery of damages suffered when he was struck by a truck owned by Mardigan and driven by O'Brien. The trial court granted summary judgment on defendants' motion and dismissed the action. Plaintiff appealed. We affirm.

The motion for summary judgment was based upon the complaint and answer, the affidavit of Mardigan and the depositions of plaintiff, O'Brien and one Robert E. Davis. Plaintiff filed a brief in support of his motion in opposition to summary judgment on the ground that there was a genuine issue of fact to be tried by a jury in this case. Defendants filed a reply brief thereto. At issue was defendants' claim that plaintiff's exclusive remedy was limited to his recovery under workmen's compensation and that he had no independent remedy against them.

The undisputed relevant facts as disclosed by the record and found by the trial court reveal the following. Calumet Trucking Company (Calumet) executed a contract in early 1967 with Youngstown Sheet and Tube Company to fill a lake on Youngstown's property with slag. Under the contract, Calumet was to haul slag from the Bairstow slag pit in Hammond, Indiana to the lake dump three miles away. Calumet owned sufficient loading equipment and had the personnel to operate it, but needed trucks and drivers to haul the slag. Hence, Calumet leased the trucks and drivers from local truck owners and carried out the contract using leased personnel and equipment that were under the supervision of Calumet foremen. Both plaintiff and defendant Mardigan leased trucks to Calumet and both plaintiff and defendant O'Brien were drivers for Calumet under such a lease. Such arrangements were evidenced by written leases prepared by Calumet.

The form leases provided that the lessors, in this case plaintiff and defendant Mardigan, were to furnish the trucks and truck drivers as well as pay the drivers and keep the trucks in repair. The lessee, Calumet, was to see that the trucks contained the proper registration card from the Public Service Commission of Indiana; was responsible for obtaining sufficient liability insurance; and was required to furnish the trucks with such identification cards as were necessary to inform the general public that they were being operated by, for and under the control of Calumet. Also, the contract provided that the truck driver "will be responsible to the Lessee and be under the supervision and control of the Lessee and shall perform his services in any reasonable and lawful manner that the Lessee may direct."

In compliance with such leases, both plaintiff's and Mardigan's trucks carried Calumet signs and used Calumet's P.S. C.I. permits. Calumet foremen gave the initial directions to the truck drivers on how to load their trucks and conduct themselves around the pit. Calumet employees ran the loading equipment, set up the route to be run by the trucks, weighed the loads of slag and generally supervised and controlled the details of the operation at the slag pit and the dump. It is undisputed that Calumet's foremen did exercise control over the drivers at the site of the accident. All three deposition witnesses, including plaintiff, acknowledged that Robert E. Davis, the night foreman at the site of the accident, was in control. Plaintiff said of Davis: "Well, his job was to just keep everybody working, to see that the job was running right, to see that the grade over in Youngstown Steel was being taken care of right. He was the general boss." Further, that "if I was driving reckless, no lights on my truck or trying to haul too much weight or anything that would hinder Calumet Trucking, he would sure let me know about it. * * * He ran the show." Davis had authority to recommend dismissal of drivers and had done so. In sum, the area was within Calumet's control. It fully exercised it.

The occurrence of the accident was aptly described by the district court in its memorandum of decision: "The accident occurred while Littleton [plaintiff] was hauling slag during the morning of

June 23, 1967. Plaintiff was being loaded at the slag pit prior to making the last trip of the night. He had left the cab of his truck to check the right rear tires of his rig when he was struck from behind by defendant Mardigan's truck, which defendant O'Brien was pulling in beside plaintiff's truck." Plaintiff first reported the accident to Davis immediately after it occurred.

█ Pursuant to the provisions of the Indiana Workmen's Compensation Act of 1929, as amended, Burns' Ind. Stat.Ann. § 40–1201 et seq., 1965 Repl., Vol. 8, Part 1, IC 1971, 22–3–2–1 et seq., plaintiff filed a claim for workmen's compensation benefits against Calumet for his injuries and has received benefits thereunder. Plaintiff is thus estopped from denying that he was Calumet's employee at the time of his injury. If he has any remedy against defendants in the case at bar it can only flow from the Indiana Workmen's Compensation Act. Section 40–1213 of the Act, IC 1971, 22–3–2–13, provides in substance that one who receives compensation may sue a potentially liable party to recover damages, other than the employer and a person in the same employ. Hence, it is critical here to determine who was the employer of O'Brien at the time of the accident; that is, whether he was employed by Calumet or Mardigan.

In resolving this question the trial court quite properly looked to the borrowed servant doctrine as considered by the Indiana courts. It has been said: "One may be in the general service of another and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation. The true test in determining who the master is, in a case of this character, is, not who actually did control the actions and movements of the servant in doing the work, but who had the right to control." Sargent Paint Co. v. Petrovitzky, 71 Ind.App. 353, at 359, 124 N.E. 881, at 883 (1919). "In deter-

mining who is the master, we must inquire whose is the work being performed. As before stated, this is answered by ascertaining who has the power to control and direct the servant in the performance of the work." Id., at 360, 124 N.E. at 883.

In N.Y. Cent. R. R. Co. v. Northern Ind. Pub. Serv. Co., 140 Ind.App. 79, 221 N.E.2d 442 (1966), referred to as the "Nipsco case", the court stated, at 84, 221 N.E.2d at 446, that the borrowed servant doctrine was one "which states that an employee while generally employed by one party, may be loaned to another in such a manner that the special employer may be responsible for the acts of the employee under the doctrine of respondeat superior. Indiana has recognized this doctrine." See also Uland v. Little, 119 Ind.App. 315, 321–322, 82 N.E.2d 536 (1949); Standard Oil Company v. Soderling, 112 Ind.App. 437, 446–447, 42 N.E.2d 373 (1942), aff'd 229 Ind. 47, 95 N.E.2d 298 (1950); Bates Motor Transport Lines, Inc. v. Mayer, Admx., 213 Ind. 664, 671, 14 N. E.2d 91 (1938).

█ It is undisputed that both Littleton (plaintiff) and O'Brien (defendant) were similarly employed. Littleton was a self-employed truck owner who leased his truck to Calumet with himself as the truck driver. O'Brien was originally employed by Mardigan who leased a truck to Calumet with O'Brien as the driver. Both drivers were engaged in having their trucks loaded with slag at the site of the accident to be hauled to the Youngstown dump. This was Calumet's work under its contract with Youngstown. Both trucks carried Calumet signs and used Calumet P.S.C.I. permits. These latter factors have been held to be important considerations in determining who the employer is. Gas City, etc., Co., Inc. v. Miller, 107 Ind. App. 210, 214–215, 21 N.E.2d 428 (1939), relying upon Bates Motor Transport, 213 Ind. at 671, 14 N.E.2d 91. The facts, taken together with an earlier showing that Calumet had the right to control the truck drivers in the

performance of Calumet's work, conclusively establish to our satisfaction that the borrowed servants, Littleton and O'Brien, were the employees of the borrowing employer, Calumet, for the purposes of *respondeat superior*.

We are left with the final contention raised by plaintiff, namely, that the issue of who is the employer of a borrowed servant is one of fact for a jury to decide; that reasonable men could surely differ as to the meaning of the facts in this case; and that therefore the trial court erred in entering summary judgment.

As pointed out in various Indiana cases, the critical question here "is usually a question of fact for the jury or court." *See* the *Nipsco* case, 140 Ind.App., at 86, 221 N.E.2d at 446. However, in *Sargent*, 71 Ind.App., at 366, 124 N.E. at 885, citing with approval Foster v. City of Chicago, 197 Ill. 264, 64 N.E. 322 (1902), in referring to a written contract providing for the furnishing of labor and materials in a city sewer construction job, the Indiana court stated: "The contract being in writing, the court correctly held that it was a question of law for the court to say whether the injured party was a servant of the city or of Sheehy [the contractor]." In *Nipsco*, and other cases holding that the issue of who is the employer of a borrowed servant is one of fact for the jury, it clearly appears that there was a genuine issue as to material facts. *See* Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A.

In the case at bar, as the trial court observed, the determining factors are the interpretation of the lease contract, hereinabove referred to, *a question of law*, and consideration of the *undisputed facts* relating to the "whose work" and "control" factors, above detailed. We agree with the trial court that here the critical facts are undisputed and that "reasonable men could not dispute that both the intent of this contract and the actual field practice were to give control of the truck drivers to the lessee."

We have considered other questions raised by plaintiff and find them without merit or without material relevance to the issues for determination here.

We hold that the district court did not err in concluding as a matter of law that O'Brien was exclusively employed by Calumet at the time of the accident in question. We affirm the summary judgment in favor of defendants and the dismissal of plaintiff's action.

Affirmed.